**FOX et al. v. SUMMIT KING MINES, LIMITED.**

No. 232.

District Court, D. Nevada.

Feb. 25, 1943.

Martin J. Scanlan, of Reno, Nev., for plaintiffs.

Thatcher & Woodburn, of Reno, Nev., for defendant.

NORCROSS, District Judge.

This is an action brought under the Fair Labor Standards Act of 1938, §§ 1–19, 29 U.S.C.A. §§ 201–219. Plaintiffs were employees of defendant, a Nevada corporation, in the operation of its mill for the reduction of gold and silver ore, located about thirty miles from Fallon, Nevada. The product of the mill operations is gold and silver bullion which is shipped direct to the United States Mint at San Francisco. While the mill is classified as one of seventy ton capacity, the average amount of ore treated therein during the time in question was approximately fifty-five tons per day. The mill was operated continuously for twenty-four hours a day. Each work day was divided into three shifts of eight hours each. The mill embraced two classifications designated as

ball mill and solution operations. Two men were employed on each shift, one in charge of the ball mill and the other of the solution process, each to aid the other if occasion required. The man in charge of the solution process was, also, in general charge but in case of temporary absence of either, for any cause, the other remained in charge. Seventy-two hours is the time usually consumed from the time the ore enters the mill until the actual values in bullion form are finally recovered.

The mill began operations on January 5, 1940, when the 42-hour week was in effect under the said Fair Labor Standards Act and since has been in operation continuously including all the time herein in question. Prior to the opening of the mill on December 29, 1939, the defendant posted in the mill a notice to mill employees on a daily wage basis to the effect that the men would work 7-hour shifts, relieving each other one hour for lunch. From January 5, to June 11, 1940, the wages of the solution men were $6 per day and of the ball mill men $5.50 per day for a six day week, at which latter time the wages were increased, respectively, 35 cents per day. On October 23, 1940, the forty hour week went into effect and from that time on defendant paid overtime payments therefor, but the basic wages and seven working hours per shift remained unchanged. On April 23, 1941, a controversy respecting a demand for increase in wages was settled by an agreement entered into between the respective parties by the terms of which the solution men would work 11 minutes more and the ball mill men 12 minutes more per shift, for which overtime would be paid, in an amount approximating $1.50 per week, such additional work time to be performed during the lunch hour shortening the same, respectively, to 49 and 48 minutes. Notice of the same was posted in the mill.

Of the eleven plaintiffs but three were employees at any time during the year 1942; five others were employed during a portion of the year 1941, and all began their employment at various times during the year 1940. Time covered, from date of employment to date of termination thereof, varied from about five months to two years, the average eight hour shift mill time being, approximately, one year and four months and of specified working time, seven hours, one year and two months.

The salient portions of the two notices, above referred to as posted in the mill, read as follows:

"Attention Mill Men   December 29th, 1939.

"The Following Rules Will be Observed in the Mill.

"1. The Solution man on shift will be in charge of the mill * * *.

"2. Men will work seven hour shifts, relieving each other one hour for lunch. * * * The operator relieving will be responsible for the other operators work as well as his own. * * *

"3. Time cards will be filled out for each man on shift * * *.

"4. For all major repair work call the Master Mechanic.

"5. For any major trouble on the afternoon or night shift call the Mill Superintendent by phone at once.

"6. * * * * * * * * * * * * *

"7. * * * * * * * * * * * * *

"8. * * * * * * * * * * * * *

"9. * * * * * * * * * * * * *

"10. All wages have been raised 25¢ per day * * * as at the present time there are no living accommodations at the property."

"Notice to Mill Employees on Daily Wage Basis.   April 23, 1941.

"To comply with the agreement reached April 22nd, 1941, whereby overtime arrangements were to be made to enable employees to earn $1.50 more per week, the following schedule has been worked out:

"Solution Men:

"Your shift including the lunch period will be 8 hours as it always has but instead of taking one hour for lunch you will take 49 minutes.

"On your time cards mark Daily rate $6.35 but under time worked put 7 hours plus 11 minutes overtime. This will result in an increase of $1.50 per week.

"Ball Mill Men:

"Your shift * * *." Note: same as above for Solution Men with exception of "48 minutes" and "daily rate $5.85."

"Men earning $5.25 per day: * * *. $5.00 per day. * * *"

Plaintiffs demand judgment for a total unpaid overtime for labor, so rendered, in the sum of $3,953.83; liquidated damages in the same amount, as provided by statute, attorneys fees and costs. Such

claimed right of recovery is based both on the contention that the said lunch hour, in its entirety, should be included in overtime computation, as a matter of law and that services were actually rendered during that time. These contentions are controverted by defendant and in addition it is alleged: "That the Court is without jurisdiction of the subject matter of this action."

A stipulation was filed by counsel for the respective parties "that evidence pertaining to the issues involved in this case may be reduced by stipulations following, to wit:

"* * * that the computations of the periods of time, number of days, rate of wages per day, was for seven (7) hours and rate of wages per hour was at the rate of seven (7) hours per day with time and one-half for overtime and the total amount of compensation claimed to have been earned and unpaid as stated on pages 5, 6 and 7 of plaintiff's Amended Bill of Complaint are correct in accordance with plaintiffs' theory of the case and need not be proven.

"* * * that the testimony of plaintiffs not present at the trial would be the same as the plaintiffs testifying as to the same character of work, mill routine, policy of management, making time and work reports and other evidence of a general nature pertaining to their employment, and that they would also testify as to the number of days they were employed, the rate per day and the rate per hour at time and one-half and the total amount claimed to be unpaid be the same as itemized * * * in plaintiffs' Amended Bill of Complaint."

But three of the plaintiffs testified at the hearing. Their testimony mainly related to claimed services customarily performed by them during the so-called lunch hour, following completion of luncheon and subject to occasional call for assistance before completion thereof. Testimony to the contrary was offered by the defendant whose witnesses were the manager of the company and mill superintendent. This testimony was to the effect that while not present during all lunch hours, they were frequently so present and never had observed the solution or ball mill men returning to work prior to the termination of their lunch hour; that an occasion for such returning would seldom happen; that when on duty during the hours covered by their shift, the actual time required to perform the ordinary necessary services would not exceed one half thereof, the remaining time requiring no further effort than casual observance. Testimony was also to the effect that other mills of a similar size, grade and character were and could be operated by a one man shift. Time cards were required to be filled out at the end of each shift, none of which disclose a claim for overtime, such as is involved in this action.

The question of overtime allowance for alleged actual service rendered during the lunch period would present the only material question in this case if the same is one within the jurisdiction of this court, as we view the law as stated by the District Court of Idaho in the case of Sunshine Mining Co. v. Carver, D.C., 41 F. Supp. 60, to state the law correctly that time off allowed for luncheon is not within time for which any payment can be recovered by an employee unless actual services were necessarily performed during that time for which he would be entitled to recover time and one half for overtime.

Whether operations of a mill for the reduction of gold and silver bearing ore to the form of bullion for transfer to a United States Mint and the subsequent transfer thereto, as required or authorized by laws of the United States, bring such operations within provisions of statutes having their basis in laws relating to interstate commerce, presents the controlling question in this case—that of jurisdiction. It is clear that such operations and transfer do not come within the purview of commerce in the sense that it is used in statutes dealing with or affecting interstate commerce otherwise than means of conveyance may be used for such purpose. That defendant corporation was not engaged in interstate commerce in the operations of its mill and the transfer of the products thereof and, hence, not subject to the provisions of the Fair Labor Standards Act, is in accordance with the recent decision of the District Court of South Carolina, Holland, Administrator of the Wage and Hour Division, United States Department of Labor, v. Haile Gold Mines, Inc., D.C., 44 F.Supp. 641. See, also, 31 U.S. C.A. Chapter 8, §§ 316c, 441, 448, 734, 734a.

It is the conclusion of the Court that the action should be dismissed. It is so ordered.

### On Motion For New Trial

Plaintiff's motion for a new trial having been submitted, and the Court being

fully advised in the premises, it is the conclusion of the Court that the same should be denied. While the opinion, heretofore filed, was based upon the conclusion that the Court was without jurisdiction, which remains the view of this Court notwithstanding the decision in the case of Canyon Corporation v. National Labor Rel. Board, 8 Cir., 128 F.2d 953, by reason of the fact that the Board had for consideration not only shipments of gold and silver to a United States Mint as part of the results of its milling operations, but also, shipped slag therefrom and sold the same to a smelting company in another state. Although the question of jurisdiction involved in this case has not as yet reached a final decision by the Supreme Court or a controlling decision of this Court been rendered by the Circuit Court of Appeals of this Circuit, respecting the question of jurisdiction, it is, also, the conclusion of the Court, that, irrespective of the question of jurisdiction, plaintiffs have failed to establish that they performed any substantial amount of labor during the lunch hour over and above that for which they received pay for overtime. The fact that their daily reports made no such claim is a circumstance to be considered together with the conflicting evidence submitted by the respective parties.

It is, therefore, ordered that the motion for a new trial be, and the same hereby is, denied.