**WALLING, Adm'r of Wage and Hour Division, U. S. Department of Labor, v.
HAILE GOLD MINES, Inc.**

No. 5059.

Circuit Court of Appeals, Fourth Circuit.

May 28, 1943.

Morton Liftin, Atty., United States Department of Labor, of Washington, D. C. (Irving J. Levy, Acting Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., George A. Downing, Regional Atty., of Atlanta, Ga., and Morton H. Rowen, Atty., U. S. Department of Labor, of Washington, D. C., on the brief), for appellant.

Rufus M. Ward, of Spartanburg, S. C. (R. S. Stewart and D. Reece Williams, Jr., both of Lancaster, S. C., D. W. Robinson, Jr., of Columbia, S. C., and C. Erskine Daniel, of Spartanburg, S. C., on the brief), for appellee.

Before SOPER, DOBIE, and NORTH-COTT, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a final judgment of the United States District Court of the Western District of South Carolina, denying an injunction sought by the Administrator of the Wage and Hour Division, United States Department of Labor (hereinafter called the Administrator), under Section 17 of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C. § 201 et seq., 29 U.S.C.A. § 201 et seq. (hereinafter called the Act), for the purpose of restraining Haile Gold Mines, Inc. (hereinafter called Haile), from violating provisions of the Act.

Two questions are now presented for our consideration: (1) Whether employees of Haile who produced gold in South Carolina which was shipped through the mails and sold to the United States Mint in Pennsylvania were "engaged * * * in the production of goods for commerce" within the meaning ,of the Act; (2) whether Congress has the power to exclude goods produced under substandard conditions from the channels of interstate commerce regardless of the purpose for which the goods are shipped.

At the time this action was brought in the court below, Haile was operating a gold mine near Kershaw, South Carolina, under a license issued to it by the United States, pursuant to the Gold Reserve Act of 1934, 48 Stat. 337. Haile sold all of its gold to the United States Mint at Philadelphia, Pennsylvania, at a price fixed by the United States Government.

The employees, whose wages are involved in this action, were employed by Haile in the digging and crushing of rock from which the gold was later extracted. They were paid less than the minimum wages required by the Act and they worked more than the maximum number of hours prescribed by the Act, without receiving the statutory overtime compensation. After the gold is obtained from the mine, it is delivered by Haile to the United States Post Office in Kershaw, South Carolina, and there forwarded to the United States Mint at Philadelphia, Pennsylvania. Haile admitted that "the gold mine delivers the package to the Post Office just like anybody else delivers a package for transmission".

The record also reveals that the Post Office handled the gold shipments in the same manner that it handled ordinary mail, using the regular registry receipt. Accordingly, the postmaster was not acting as agent for the United States Mint in forwarding the gold to Pennsylvania. Haile was not paid for the gold until after it had been received and inspected at the Mint in Pennsylvania. Gold which did not conform to the Government's specifications or which was otherwise unsuitable for Mint treatment, was rejected after it reached the Mint and was returned at Haile's risk and expense. The United States Post Office, therefore, was really a carrier for Haile as it was for ordinary mail; it was *not* authorized to accept delivery of gold as agent for the Mint.

"Production" as defined in Section 3(j) of the Act expressly includes mining as well as "any process or occupation necessary" to production. "Goods", as that term is used in Section 3(i) of the Act, mean "articles or subjects of commerce of any character". This definition of goods is broad enough to include gold, since Section 3 of the Gold Reserve Act, 31 U.S.C.A. § 442, specifically provides that gold may, under certain circumstances, be used "for industrial, professional, and artistic" purposes. See, also, United States v. Marigold, 9 How. 560, 566, 13 L.Ed. 257 et seq. Section 3(b) of the Act defines "commerce" as including "transportation, transmission, or communication among the several States or from any State to a place outside thereof". It cannot be denied that the gold produced by Haile was transported and transmitted from South Carolina to a "place outside thereof".

Thus, a literal reading of the relevant portions of the Act indicates that Haile's employees fell squarely within its coverage. The court below, however, was of the opinion that the necessary interstate aspect required by the Act was missing, since the gold was shipped "pursuant to the order of the United States Government" which "would appear to be an administrative act of the Government rather than a shipment in commerce". Accordingly, since Haile "is required to send its gold where the Government directs", Judge Wyche below felt it did not engage in interstate commerce within the ambit of the Act.

With all due respect to the court below, we cannot agree with this interpretation of

the situation. Cf. N. L. R. B. v. Sunshine Mining Co., 9 Cir., 110 F.2d 780, cert. denied, 312 U.S. 678, 61 S.Ct. 447, 85 L.Ed. 1118; Canyon Corp. v. N. L. R. B., 8 Cir., 128 F.2d 953; and Timberlake v. Day & Zimmerman, Inc., D.C.S.D.Iowa, 49 F. Supp. 28, with N. L. R. B. v. Idaho-Maryland M. Corp., 9 Cir., 98 F.2d 129, and Fox v. Summit King Mines, Ltd., D.C.Nev., 1943, 48 F.Supp. 952.

The relevant Treasury Regulations specifically provide that gold may be forwarded by mail or *by any other carrier*. 31 Code Fed.Reg. §§ 54.13, 54.36. Nor does the Gold Reserve Act contemplate that the gold be shipped *solely* pursuant to governmental direction. Of course, to the extent that the Post Office carried out the instructions of Haile, the gold was being shipped "pursuant to governmental directions"; but this is also true of the general business of mail-order merchants, where the mails are merely used as an instrumentality of commerce. See International Textbook Co. v. Pigg, 217 U.S. 91, 30 S. Ct. 481, 54 L.Ed. 678, 27 L.R.A.,N.S., 493, 18 Ann.Cas. 1103; N. L. R. B. v. Carroll, 1 Cir., 120 F.2d 457; Thompson v. Daugherty, D. C., 40 F.Supp. 279; Fleming v. Gregory, D. C., 36 F.Supp. 776.

Thus, the Post Office, in transporting the gold to the United States Mint in Pennsylvania, was not the agent of the Mint, and the gold did not become the property of the Government until it had arrived at the Mint in Pennsylvania, was duly receipted for, inspected and paid for by United States Treasury check. We therefore feel that the business conducted by Haile constituted interstate commerce within the Act and was not a mere administrative act of the Government.

The court below also erroneously stated that Haile "must send its gold where the Government directs". As we have already seen, however, Section 3 of the Gold Reserve Act expressly provides for the sale of gold, under certain circumstances, to persons for industrial, professional and artistic use. See, also, 31 Code Fed.Reg. § 54.21. Indeed, the very license issued to Haile in the instant case stipulated that Haile could produce gold "for furnishing to, or processing for, persons authorized under the regulations issued under the Gold Reserve Act of 1934 to acquire and hold such gold * * * or for offering it for sale to the United States".

As a further reason for denying the injunction, Judge Wyche stated that the Act could not apply to Haile because there was no competitive market for gold in interstate commerce and therefore its local production could not have any effect on interstate commerce. The decision of the Supreme Court in United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, however, would seem to refute this limited theory, which would restrict the Congressional power to the regulation of interstate competition. In sustaining the constitutionality of the Fair Labor Standards Act, the Supreme Court used the following language at 312 U.S. at page 116, 61 S.Ct. at page 458, 85 L.Ed. 609, 132 A.L.R. 1430: "* * * the power of Congress under the Commerce Clause is plenary to exclude any article from interstate commerce subject only to the specific prohibitions of the Constitution."

We find nothing in the Fifth or Tenth Amendments to curtail the authority of Congress to prohibit the shipment in interstate commerce of articles produced under substandard labor conditions, regardless of whether or not the articles compete in interstate commerce with other goods. The Supreme Court's opinion in the Darby case specifically relies on prior Supreme Court decisions which appear to establish this principle that the power of exclusion from interstate commerce does not depend on either the "commercial" nature of the article or the existence of competition. E. g., see Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522 (kidnapped persons); Brooks v. United States, 267 U. S. 432, 45 S.Ct. 345, 69 L.Ed. 699, 37 A. L.R. 1407 (stolen automobiles); Weber v. Freed, 239 U.S. 325, 36 S.Ct. 131, 60 L.Ed. 308, Ann.Cas.1916C, 317 (prize fight films); Hoke v. United States, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523, 43 L.R.A., N.S., 906, Ann.Cas.1913E, 905, and Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168 (women for immoral purposes); Champion v. Ames (lottery case), 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492 (lottery tickets); Reid v. Colorado, 187 U.S. 137, 23 S.Ct. 92, 47 L.Ed. 108 (diseased stock); United States v. Simpson, 252 U.S. 465, 40 S.Ct. 364, 64 L. Ed. 665, 10 A.L.R. 510 and United States v. Hill, 248 U.S. 420, 39 S.Ct. 143, 63 L.Ed. 337 (intoxicating liquors for personal use). See, also, Edwards v. Cali-

fornia, 314 U.S. 160, 62 S.Ct. 164, 86 L. Ed. 119, where the Supreme Court, in outlawing the attempt by California to exclude from its territorial borders indigent persons from other States, said at page 172 of 314 U.S., at page 166 of 62 S.Ct., 86 L.Ed. 119: "It is immaterial whether or not the transportation is commercial in character".

Accordingly, we hold that the Act applies to goods which may never come in competition with goods in other States. Hamlet Ice Co. v. Fleming, 4 Cir., 127 F. 2d 165, cert. denied, 317 U.S. 634, 63 S.Ct. 29, 87 L.Ed. ——; Atlantic Co. v. Walling, 5 Cir., 131 F.2d 518. For the reasons assigned, we are of the opinion that Haile's employees are encompassed by the Act and that the injunction requested by the Administrator should have been granted.

### The Motion of Haile to Dismiss This Appeal.

■ We now turn to a consideration of the motion made by Haile to dismiss this appeal on the ground that "the question presented by this appeal is now a moot question for the reason that the appellee is no longer engaged in the mining and reduction of gold-bearing ore, has dismantled its former gold mine and removed its machinery to the State of Alabama, where it is engaged in mining graphite, in which it is in full compliance with the Fair Labor Standards Act, and its license is expired. * * * It is respectfully submitted that since the appellee is not doing anything sought to be enjoined, no injunction should properly issue."

An affidavit in support of this motion to dismiss states that Haile discontinued the mining of gold in September, 1942, dismantled its mines and removed its machinery to another State. In an order dated October 8, 1942, the War Production Board requested all gold mines, with certain exceptions not here applicable, to close down as soon as possible. On October 13, 1942, Haile wrote to the United States Mint at Philadelphia, Pennsylvania, requesting the cancellation of its license, since it was suspending operations for the duration of the war. In a subsequent letter to the Director of the Mint on December 2, 1942, Haile inquired whether all the appropriate steps had been taken by it "as we will undoubtedly wish to apply for a new license should the ban on gold mining be lifted".

■ It is familiar law that the discontinuation of an illegal practice by a defendant (either by going out of business or otherwise) after the institution of legal proceedings against the defendant by a public agency, does not render the controversy moot. United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S. Ct. 540, 41 L.Ed. 1007; N. L. R. B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; Federal Trade Commission v. Goodyear Co., 304 U.S. 257, 58 S.Ct. 863, 82 L. Ed. 1326; Fleming v. Cincinnati Union Terminal Co., 6 Cir., 117 F.2d 1012; Securities and Exchange Commission v. Lawson, D.C., 24 F.Supp. 360. This particularly is true where the challenged practices are capable of repetition. See Southern Pac. Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310. Nor is a case rendered moot where there is a need for the determination of a question of law to serve as a guide to the public agency which may be called upon to act again in the same matter. Gay Union Corp. v. Wallace, 71 App. D.C. 382, 112 F.2d 192, certiorari denied 310 U.S. 647, 60 S.Ct. 1098, 84 L.Ed. 1414; Boise City Irr. & Land Co. v. Clark, 9 Cir., 131 F. 415. We also note that the decision of the court below has already been relied upon by other courts in denying a recovery to an employee suing under the Act. See Fox v. Summit King Mines, Ltd., D.C.Nev.1943, 48 F.Supp. 952.

The fact that Haile has temporarily closed its gold mines does not remove from our consideration a decision of the justiciable issues before us which the Administrator has a right to have determined. Haile is still a going concern and it still owns the gold mines and the equipment to operate them. The admitted likelihood of Haile's resuming operations as soon as the ban on gold mining has been lifted clearly indicates that a genuine and substantial controversy exists between the parties. The possibility of future violations of the Act by Haile is very much with us and not merely within the realm of prophecy. Moreover, an adjudication on the merits by us at this time will finally resolve the instant dispute and obviate the need for, and the expense of, repetitious litigation in the future if, as, and when Haile resumes mining operations.

The instant case is thus clearly distinguishable from such decisions as Mills v.

Green, 159 U.S. 651, 16 S.Ct. 132, 40 L. Ed. 293, and St. Pierre v. United States, 319 U.S. ——, 63 S.Ct. 910, 87 L.Ed. ——, decided by the Supreme Court on May 3, 1943, where it was impossible to grant the plaintiff any effectual relief, or United States v. Hamburg Amerikanische Packet-Fahrt-Actien Gesellschaft, 239 U.S. 466, 36 S.Ct. 212, 60 L.Ed. 387, where there was nothing to be accomplished by a decision by the court of the case before it.

This appeal is, therefore, not moot. Haile's motion to dismiss this appeal is overruled and the judgment of the District Court is reversed on the merits.

Reversed.