Charles C. WALLACE, John B. Wallace and Conrad E. Bjorkman

v.

TENNESSEE AIRMOTIVE, INC.

Civ. A. No. 4179.

United States District Court
E. D. Tennessee, S. D.

Feb. 19, 1965.

S. Del Fuston, Chattanooga, Tenn., for plaintiff.

Alvin O. Moore, Spears, Moore, Rebman & Williams, Chattanooga, Tenn., for defendant.

WILSON, FRANK W., District Judge.

This is a suit for recovery of minimum wages, overtime, and other benefits under the Fair Labor Standards Act (29 U.S.C. § 201 et seq.). The suit was originally filed as a class action, but eventually three employees or former employees filed the necessary consent to become a party to the suit. The case was tried by the Court without a jury upon September 24, 1964. At that time only the issues of coverage and exemption were tried, it being agreed between the parties to reserve any trial upon the remaining issues pending the outcome of the coverage and exemption issues. The parties having now submitted briefs, upon the entire record in this cause the Court makes the following findings of fact:

I

The plaintiffs in this lawsuit, John B. Wallace, Charles C. Wallace, and Conrad E. Bjorkman, are each former employees of the defendant. The plaintiff, John B. Wallace, worked for the defendant from August 30, 1961, to February 8, 1963. He worked upon the night shift, from 7:00 p. m. to 7:00 a. m., attending the University of Chattanooga as a student during the day. His duties included keeping the office open, answering calls, refueling aircraft, attending hangar customers, tying down airplanes, and generally rendering services to customers during the night hours. The plaintiff, Charles C. Wallace, worked for the defendant from July 1, 1962 until December 4, 1962. He likewise worked at night and his duties were the same as those of John B. Wallace, his brother. Conrad E. Bjorkman, who did not testify but was also a plaintiff in the suit, was employed as an aircraft and engine mechanic, but the period of his employment does not appear in the record.

## II

. The defendant, Tennessee Airmotive, Inc., is a Tennessee corporation which generally conducts an aircraft sales and service business. It conducts its business at airport locations, having a place of business at Rock Hill, South Carolina, Shelby, North Carolina, Tullahoma, Tennessee, and Chattanooga, Tennessee. Its most extensive operations and activities are at Chattanooga, Tennessee, and the operations at Rock Hill, Shelby, and Tullahoma are similar to its activities at Chattanooga but in each instance of more limited scope. For this reason the testimony related largely to the activities at Chattanooga with only brief reference being made in the proof to the more limited activities at other airports.

## III

The defendant, who describes itself as a "fixed base operator," is in the aircraft sales and service business, operating from leased premises located at the various airports where it conducts its business, selling, renting, chartering, and servicing aircraft to or for anyone who seeks to use its services or to buy its products. In the conduct of its business it engages in the following activities or renders the following services:

A—It is the local dealer for sales of the Piper aircraft, selling such aircraft to the general public and purchasing such planes from the Piper aircraft distributor located in Louisville, Kentucky, who in turn purchases from the manufacturer. It has no exclusive franchise as such dealer.

B—It is the local airport dealer for the Humble Oil Company, selling Esso aircraft oil and gasoline products to the general public. In addition to selling such oil and gasoline products to the general public, it services the Humble Oil Company contract with Delta Air Lines and with the United States Government for supplying gasoline to Delta Air Lines at Chattanooga and military aircraft at Tullahoma. For this service it is paid a service fee of three cents per gallon by Humble Oil Company, with the Delta Air Lines and the United States Government making payment for gasoline so purchased to Humble Oil Company under a national contract.

C—It conducts an air taxi and charter service, providing an air ambulance service, leasing or renting planes unto the general public or chartering flights for the general public, and, in this regard, providing either aircraft or pilot or both. For these purposes it has an Air Taxi Operator's Certificate from the Federal Aviation Agency and owns approximately ten aircraft of various sizes and models which it uses in its rental, taxi, and charter service.

D—It rents hangar space to aircraft owners and users, provides storage and tie down service and maintains, services, inspects, and repairs all kinds of aircraft. It performs aircraft engine and radio maintenance and repairs. To render this service it employs aircraft and engine mechanics and radio mechanics licensed under the Federal Aviation Agency. These services are provided for the general public, but not for any commercial airlines.

## IV

All sales and services are made at uniform rates and prices, without discount for quantity purchases and without special rates to any customer or class of customers.

## V

The defendant's gross sales and the breakdown of sales for the calendar years 1962 and 1963 were as set forth in Exhibit D–2, with gross sales for 1962 being in the sum of $292,630.88 and gross sales for the year 1963 being in the sum of $355,811.30. As reflected by the said exhibit, the total sales of fuel and oil amounted to $75,056.87 for 1962 and $91,574.14 for 1963. All sales were made to the ultimate user or customer except that of a total of $15,848.25 in sales of parts for 1962 and a total of $27,702.32 in sales of parts for 1963,

d 6.3% respectively of such sales were made to other aircraft sales and service companies, such sales being described as "courtesy sales". All sales except the aforesaid "courtesy sales" were made within the state in which the respective establishments operated by the defendant were located.

## VI

In the aircraft sales and service industry more than 75% of the annual dollar volume of the defendant's sales and services would be recognized as retail sales and services.

Upon the basis of the foregoing findings of fact and upon the basis of the entire record in this cause, the Court makes the following conclusions of law:

## I

The employment of the plaintiffs, John B. Wallace and Charles C. Wallace, was within the coverage of the Fair Labor Standards Act, while the employment of the plaintiff, Conrad E. Bjorkman, was not within the coverage of the Fair Labor Standards Act. The activities of the employee, not those of the employer, are decisive on the question of the Act's coverage. *Mitchell v. H. B. Zachary Co.*, 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753 (1960); *Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959); *Wirtz v. Modern Trashmoval, Inc.*, 4 Cir., 323 F.2d 451 (1963). While it does not appear from the evidence that either of the plaintiffs was engaged in commerce or in the production of goods for commerce, it does appear that the plaintiffs, Charles Wallace and John Wallace, were engaged in a closely related process or occupation directly essential to the production of goods for commerce. Employees may be found to be within the coverage of the Act in spite of the relatively small portion of the employer's business in which they engaged which may come within the coverage of the Act. *Roland Electric Co. v. Walling*, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946); *Mabee v. White Plains Publishing Co.*, 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946). The rendering of service upon commercial airlines and military aircraft to the extent of delivering gasoline under the Humble Oil Company contract would therefore constitute activity so closely related and directly essential to the production of goods for commerce as to fall within the coverage of the Act, even though the sale of gasoline was not made by the defendant. Upon the other hand, no activity of the employee Bjorkman was shown to be so closely related and directly essential to the production of goods in commerce as to fall within the coverage of the Act. *Kirschbaum Co. v. Walling*, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942); *Borden Co. v. Borella*, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865 (1945); *10 East 40th Street Bldg. v. Callus*, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806 (1945).

## II

The defendant is exempt from coverage under the Fair Labor Standards Act as a retail or service establishment under Section 213(a)(2), Title 29 U.S.C. The defendant meets each of three tests required to qualify for the retail exemption in that (1) more than 50% of its annual dollar volume of sales or services were made within the state of each respective establishment; (2) more than 75% of the total annual sales were to ultimate consumers and were not for resale; and (3) more than 75% of the total annual sales volume would be recognized in the particular industry as retail sales or services. *Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451 (1963).

## III

The defendant would not be an "enterprise" as defined in Section 203(s), 29 U.S.C., so as to disqualify for the retail exemption as its annual gross volume of sales did not exceed $1,000,000.00 and it would not be a gasoline service establishment with annual gross volume of

09

sales in excess of $250,000.00 of gasoline and related products.

## IV

 The defendant would not qualify as a "carrier by air" under Section 213 (b) (3), 29 U.S.C., so as to be exempt from the provisions of Section 207, 29 U.S.C. (overtime).

A judgment of dismissal of the plaintiffs' causes of action will enter accordingly.