**Nathaniel POLLARD and Conce Huntley**

v.

**HERBERT J. SIEGEL ORG., INC.**, Herbert J. Siegel Management Co., Inc.

**and Doca, Inc.**

**Civ. A. No. 18386.**

United States District Court
D. Maryland.

Sept. 18, 1967.

Sol C. Berenholtz and Charles B. Heyman, Baltimore, Md., for defendant Herbert J. Siegel Management Co., Inc.

H. David Gann and Edward Azrael, Baltimore, Md., for defendant Doca, Inc.

NORTHROP, District Judge.

This action is brought to recover from defendants unpaid overtime compensation, an additional equal amount as liquidated damages, and reasonable counsel fees under the provisions of the Act of June, 1938, c. 676, 52 Stat. 1069, Title 29, United States Code, Secs. 201–219, known as the Fair Labor Standards Act. Jurisdiction is conferred on this court pursuant to Title 28, United States Code, Sec. 1337, which grants to the district courts original jurisdiction over proceedings arising under any act of Congress regulating commerce.

The facts which give rise to this action are not in dispute. Plaintiff Pollard was employed as a lobby man in an apartment building known as the Dell House, located in Baltimore, Maryland, from on or about March 17, 1965, to July 13, 1966. Originally he received a straight salary of $60.00 per week, and on or about May 19, 1965, began receiving $1.25 per hour, and as of December 2, 1965, received $1.40 per hour. His duties consisted of assisting people in and out of their automobiles and occasionally parking said automobiles; receiving packages which had moved through the United States mail and which were delivered to the building by United States postal personnel; and receiving telephone calls for tenants when said calls came over the building's telephone switchboard. Plaintiff Huntley was employed as a night lobby man in the same building from on or about April 22, 1965, to July 27, 1966, at an hourly rate of $1.25 per hour. His duties were similar in nature to those of plaintiff Pollard's. It is admitted that both defendants worked in excess of forty hours per week some weeks in the course of their employment.

The building wherein the plaintiffs were employed was a partially occupied apartment building used primarily for

Michael J. Milton, Baltimore, Md., for plaintiff.

residential purposes, but also contained the offices of a dentist, a psychiatrist, and a realtor. Until August, 1966, the building was owned by the defendant Doca, Inc., and managed by defendant Siegel Co. The precise employment relationship between the plaintiffs and the defendants has not been determined, both defendants denying that it is the employer of the complainants. Defendant Siegel Co., although denying that it is the employer, has filed a cross-claim against Doca, Inc., asking for indemnification in the event that it is found liable to the plaintiffs.

The determination of the relationship between the plaintiffs and the defendants and the possible liability for indemnification is unnecessary for the disposition of this case. This is so because defendant Doca's motion to dismiss the complaint and the facts as to plaintiffs' duties clearly demonstrate that the plaintiffs were not engaged in commerce within the meaning of the provisions of the Fair Labor Standards Act. Indeed, it appears that under any state of facts which may be proved in support of the asserted claim no basic right of action can exist. Cf. Stratton v. Farmers Produce Co., 134 F.2d 825 (8th Cir. 1943).

The coverage provisions of the Fair Labor Standards Act do not represent exercise by Congress of its full powers under the commerce clause, and therefore determination of coverage for particular employees involves a problem of statutory delineation, not constitutional powers. Hope v. Nicholas Di Menna and Sons, Inc., 27 Misc.2d 261, 208 N.Y. S.2d 237 (1960). Of the possible bases for coverage under the Act, only the following two are involved in this case: 1, whether the employees are in commerce because of the nature of the activities of the tenants of the building; and 2, whether the employees are in commerce by the very nature of the work done.

Building employees are by virtue of the nature of the work carried on in a building of this type engaged in commerce if a sufficiently large propor-tion of the space in the building is used for the physical production of goods for commerce, Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L. Ed. 1638 (1942); or if a sufficiently large proportion of the space in the building is occupied by the offices of a concern which owns the building and which engages elsewhere in the production of goods for commerce, Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865 (1945). But building employees are not engaged in commerce within the meaning of the Act where the building is occupied by a variety of tenants even though a substantial portion of these tenants are engaged elsewhere in the production of goods, 10 East 40th Street Co. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806 (1945).

The *Callus* case is controlling here on the issue of whether these employees are in commerce by virtue of the activities of the tenants of the building. Not only was there no production of goods for commerce carried on in the building in question, but the commercial concerns occupying space therein did not engage in the production of goods for commerce at any other location and those concerns doing any interstate business did not occupy a significant portion of the space therein. In *Callus*, where the offices were leased to a wide variety of tenants, including manufacturing, construction, engineering and mining firms and the United States Employment Service, the court held:

"Renting office space in a building exclusively set aside for an unrestrictive variety of office work spontaneously satisfies the common understanding of what is a local business and makes employees of such a building engaged in a local business.

\* \* \* \* \* \*

"It is a distinction appropriate to the subject matter to hold that where occupations form a part of a distinctive enterprise, such as the enterprise of running an office building, they are properly to be treated as distinct from those necessary parts of the commer-

cial process which alone, with due regard to local regulations, Congress dealt with in the Fair Labor Standards Act." 325 U.S. at p. 583, 65 S.Ct. at p. 1229.

■■ The second basis for coverage put forward by the plaintiffs is that they were engaged in commerce by the very nature of their activities. They correctly contend that "it is well settled that the nature of the employees' specific duties, rather than the general character of the employer's business, which determines whether employees are engaged in commerce within the Act." See, e. g., Wallace v. Tennessee Airmotive, Inc., 238 F.Supp. 206 (D.C.Tenn.1965). Thus, although it has been often noted in the cases that the ownership and management of an apartment or office building is essentially a local business endeavor, this is not in itself determinative of whether or not the employees of such a business are covered by the Act.

■ The test for determining whether employees are engaged in commerce is whether their work is so directly and vitally related to interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity. Wirtz v. First State Abstract and Ins. Co., 362 F.2d 83 (C.A.Ark.1966). But, at the same time, it is a court's responsibility to construe liberally the provisions of the Act in order to effect fully its humane purposes.

■ The solution to the question of coverage and noncoverage is dependent upon the facts in each particular case. The nature of the activities of the employee plaintiffs in the case at hand are not sufficiently or directly related to interstate commerce to come within the provisions of the Act. The most that can be said with respect to their involvement in interstate commerce is that they may, in some insignificant way, affect commerce by virtue of their essentially local activity. This is not sufficient, Mitchell v. Lublin, McGaughy and Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243 (1960).

■ Plaintiffs cite Overstreet v. North Shore Corp., 43 F.Supp 445 (D.C. Fla.1941). That case does not support complainants' position. There the court held that employees of the defendant (toll road) engaged in the maintenance and operation of a telephone line, and while so engaged were under the provisions of the F.L.S.A. Such employees are covered for the same reason that the switchboard operators of the telephone company and the operators of the telegraph company are covered—because they are directly, not remotely, related to a facility of interstate communication so as to be a part of it. Plaintiffs here maintain that the activity of operating a private switchboard, in and of itself, is sufficiently related to an instrumentality of facility of interstate communication so as to make that activity a part of the interstate facility. Such a position is without merit, and is clearly distinguishable from cases holding that switchboard operators are engaged in an activity in interstate commerce. See, e. g., Wirtz v. Columbian Mutual Life Ins. Co., 246 F.Supp. 198 (W.D.Tenn.1965); Telephone Answering Service v. Goldberg, 290 F.2d 529 (1st Cir. 1961).

■ As to the contention that the mere acceptance of packages moving in the United States mail is activity in commerce, plaintiffs cite Walling v. Haile Gold Mines, 136 F.2d 102 (4th Cir. 1943). That case is clearly distinguishable from the facts in this case. There the defendant company was extracting gold and mailing the gold to the United States mint. The employees so engaged in the shipping of the gold were held to be covered by the Act. Generally, employees of manufacturers or distributors who physically move interstate shipments of goods or supplies, and employees who ship and receive goods moving in interstate commerce are covered by the Act. See cases cited in Wirtz v. Columbian Mutual Life Ins. Co., supra, 246 F.Supp. at p. 208. Such activity is usually associated directly and immediately with the production and distribution of goods for commerce and is an essential element

in the conducting of an interstate business. But this type of activity is not analogous to the duties performed by the plaintiffs.

The parking of automobiles of tenants, which automobiles on occasion move across state lines, is an activity similar to all the other duties of the plaintiffs—they are at most inconsequential incidents of interstate commerce resulting from the general conduct of a fundamentally intrastate business.

Neither the nature of the activities of the tenants or the building nor the nature of the work of the plaintiffs warrant a finding that they are engaged in interstate commerce. Therefore, the motion to dismiss the complaint is granted.

Counsel will prepare an appropriate order.