**Walter VELEZ, et al., Plaintiffs,**

v.

**Joseph VASSALLO, et al., Defendants.**

**No. 99 CIV. 11330(LAK).**

United States District Court,
S.D. New York.

March 26, 2002.

Leon Greenberg, New York City, for Walter Velez.

Leon Marc Greenberg, New York City, for John Panafiel, Jhofre Penafiel, Romeo Siguenza.

## ORDER

KAPLAN, District Judge.

In September 2000, this Court entered a default judgment against defendants in this Fair Labor Standards Act ("FLSA") case. Almost a year later, defendants moved to vacate the judgment, and the Court referred the motion to Magistrate Judge Katz for an inquest. Judge Katz rendered a report and recommendation, dated March 6, 2002, in which he recommended denial of the motion. Plaintiffs object to the limited extent that it did not act on their application for legal fees in defending the judgment. Defendants have not objected and have not responded to plaintiffs' objections.

It is perfectly clear that Judge Katz was right in recommending denial of the motion to vacate the judgment. Defendants' actions with respect to this matter, from beginning to end, can be characterized only as a wilful disregard of the legal system and of their obligations to it. The motion to vacate the default judgment was utterly lacking in merit and seems to have been intended solely for purposes of delay.

■■■ So far as plaintiffs' limited objection is concerned, prevailing plaintiffs in FLSA cases are entitled to attorneys' fees for prosecuting or defending appeals. *E.g., Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943, 948 (2d Cir.1959); *Aaron v. Bay Ridge Operating Co.,* 162 F.2d 665, 670 (2d Cir.1947), *mod. and aff'd,* 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948). Plaintiffs' successful defense of a post-judgment motion is indistinguishable in principle. Accordingly, plaintiffs are entitled to a reasonable attorneys' fee and expenses.

The time expended, billing rate, and expenses incurred by plaintiffs' counsel were reasonable. In addition, the proposed changes to the fee previously awarded are appropriate. Accordingly, defendants' motion to vacate the default judgment is denied. The default judgment is modified to

increase the award for attorneys' fees and expenses to $19,989.80.

SO ORDERED.

## REPORT AND RECOMMENDATION

KATZ, United States Magistrate Judge.

On October 2, 2000, pursuant to an Order of the Honorable Lewis A. Kaplan, U.S.D.J., dated September 28, 2000, the Clerk of the Court entered a Default Judgment totaling $141,403.66 against Defendants on behalf of Plaintiffs and their attorney, Leon Greenberg. Defendants have now moved the Court under Fed. R.Civ.P. 60(b)(4), for an order vacating the Default Judgment, on the grounds that the Judgment is void for lack of personal and subject matter jurisdiction, and under Fed. R.Civ.P. 60(b)(6), on the grounds that allowing the Judgment to stand would offend equity.

## BACKGROUND

The facts underlying this case were set forth in my Report and Recommendation of August 23, 2000, which was adopted by the Court by Order dated September 14, 2000. Accordingly, I will provide only those facts that bear on the resolution of the instant motion.

Plaintiffs, Walter Velez, John Penafiel, Romeo Siguenza, and Jhofre Penafiel (collectively, "Plaintiffs"), filed an Amended Complaint against Defendants, Joseph Vassallo, Beacon 76th Garage, Cross Garage Corp., Double Garage Corp., Wall Street Garage, 331 50th St. Parking, 60th Storage Corp., 76th Garage Corp., and JK Improvements, Inc. (collectively, "Defendants"), on December 6, 1999, alleging violations of the Fair Labor Standards Act ("FLSA") and New York labor laws. Essentially, Plaintiffs claimed that they were employed as garage attendants by Defendants, and that Defendants failed to compensate them for a substantial number of hours worked in overtime. (Amended Complaint ("Am.Compl.") ¶¶ 3, 17–19; Plaintiffs' Attorney's Affirmation in Support of Request for an Award of Damages at Inquest.) The Amended Complaint alleges that Defendant Vassallo is sole or part owner, officer, shareholder, and director of the other Defendants (the "corporate Defendants"). (Am.Compl.¶¶ 6–8.) For his part, Defendant Vassallo now acknowledges that he is an officer and shareholder of Defendant JK Improvements, and that JK Improvements "manages indoor parking garages and open parking lots." (Order to Show Cause, Affidavit of Joseph Vassallo ("Vassallo Aff.") ¶ 4.) Neither Mr. Vassallo nor the other Defendants ever answered or otherwise appeared in the litigation until the instant motion, and on March 15, 2000, upon motion of Plaintiffs, the Court entered a Default Judgment against all of the named Defendants, establishing their joint and several liability as to the relief sought in the Amended Complaint.[1] The case was then referred to me for an inquest on damages.

Pursuant to this Court's directives, Plaintiffs submitted materials in support of their request for damages, including attorney's fees, which were served on Defendants. Defendants' counsel, Maurice Blum, subsequently wrote this Court asking for a stay of its proceedings in order to give him time to make a motion to vacate the entry of the Default Judgment. (Letter of Maurice H. Blum, Esq., Apr. 21, 2000, attached as Exhibit ("Ex.") Q to

---

**1.** Plaintiff did not move for judgment against Defendant West 21st Street Parking Corp., and none has been entered.

Affirmation of Leon Greenberg, Esq., in Opposition ("Greenberg Aff.") at 1.) Mr. Blum stated that he and his clients "intend[ed] to appear" in the action. By Memorandum Endorsed Order dated April 24, 2000, I indicated that the matter was before this Court only for an inquest on damages, and that any motion to vacate the Default Judgment should be made to Judge Kaplan. (*Id.* at 2.) No such motion was filed; nor did Defendants submit any opposition to Plaintiffs' request for damages, or otherwise appear in the action.[2]

On August 23, 2000, this Court issued a Report and Recommendation, which was sent to Plaintiffs and the defaulting Defendants, recommending that the Default Judgment entered against Defendants, jointly and severally, include the following damage awards with respect to the Plaintiffs:

| | | |
|---|---|---|
| 1. | Walter Velez: | $12,562.50 |
| 2. | John Penafiel: | $23,385.00 |
| 3. | Romeo Siguenza: | $58,042.18 |
| 4. | Jhofre Penafiel: | $36,076.84 |
| 5. | Attorney's Fees and Costs: | $11,337.14 |

No objections to the Report and Recommendation were filed, and, as noted, it was adopted on September 14, 2000. A Judgment in the above amounts was entered.

Over ten months passed. On August 16, 2001, Defendants, by Order to Show Cause, brought the instant motion under Rule 60(b)(4) to vacate the Judgment as void, on the grounds that the Court lacked personal and subject matter jurisdiction. Defendants also seek relief on equitable grounds, under Rule 60(b)(6). Additionally, Defendants have requested the imposition of Rule 11 sanctions against Plaintiffs

and their counsel, apparently on the grounds that Plaintiffs' allegations in the Amended Complaint and in support of their request for damages were false. (Defendants' Memorandum of Law ("Defs.Mem.") at 10.) Finally, Defendants have requested an evidentiary hearing on these issues. Plaintiffs oppose each of Defendants' claims on the merits, argue that there is no need for an evidentiary hearing, and, in the alternative, request an opportunity to conduct discovery in the event the Court deems an evidentiary hearing necessary.

Defendants' motion was referred to me for a Report and Recommendation. Upon reviewing the submissions, and upon hearing argument from counsel, the Court concludes that an evidentiary hearing is not necessary to reach a disposition on this matter. Defendants have been on notice of this action since its inception, and chose to remain silent as this Court adjudicated their default and liability for damages. They have been extremely dilatory in bringing the instant motion, which this Court finds meritless. Therefore, I recommend that Defendants' motion be denied in its entirety.

## DISCUSSION

### I. *Rule 60(b)(4)*

A party may move for relief from a final judgement under Rule 60(b) of the Federal Rules of Civil Procedure. The rule lists six bases for such relief, one of which is that the judgment is void. *See* Fed.R.Civ.P. 60(b)(4). A judgment is void

---

**2.** Defendants' counsel did, however, write the Court on July 6, 2000, in response to Plaintiffs' counsel's July 1, 2000 letter to this Court. Plaintiffs' counsel had requested that the Court attend to the inquest quickly in light of his belief that Defendant Vassallo and his wife were preparing to leave the United States and thus frustrate efforts to collect any

judgment against them. (Letter of Leon Greenberg, July 1, 2000, attached as Ex. S. to Greenberg Aff.) Mr. Blum's letter in response consisted solely of protestations of shock at such a suggestion, and *ad hominem* attacks on Mr. Greenberg.· (Letter of Maurice Blum, July 6, 2000, attached as Ex. R. to Greenberg Aff.)

if entered by a court against a party over whom it lacks personal jurisdiction, or on claims over which it lacks subject matter jurisdiction. *See Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 (S.D.N.Y. 1986). Unlike other motions under Rule 60(b), which are committed to the district court's sound discretion, a motion under Rule 60(b)(4) must be granted if the court initially lacked jurisdiction. *See SEC v. Softpoint, Inc.*, No. 95 Civ. 2951(GEL), 2001 WL 43611, at *2 (S.D.N.Y. Jan.18, 2001); *China Mariners' Assurance Corp. v. M.T. W.M. Vacy Ash*, No. 96 Civ. 9533(PKL), 1999 WL 126921, at *3 (S.D.N.Y. Mar.9, 1999). Furthermore, although a Rule 60(b)(4) motion must be made "within a reasonable time," courts have been "exceedingly lenient in defining the term 'reasonable time,'" *Beller & Keller v. Tyler*, 120 F.3d 21, 24 (2d Cir.1997), and have refused to apply the doctrine of laches as a bar to relief under the rule, *id.* at 23; *see also United States v. One Toshiba Color Television*, 213 F.3d 147, 157 (3d Cir.2000)(en banc) ("Nearly overwhelming authority exists for the proposition that there are no time limits to a challenge to a void judgment because of its status as a nullity.").

Accordingly, although Defendants had full notice of this lawsuit well before any judgment was entered, and before the in-quest on damages, and although they offer no reason whatsoever for their delay in appearing in this case,[3] the Court is nevertheless constrained to consider their belated challenges to its jurisdiction.

## A. Personal Jurisdiction

### 1. Corporate Defendants

■ Although they do not deny having notice of this action, the corporate Defendants argue that the Court lacked personal jurisdiction over them, on the grounds that Plaintiffs failed to comply with the requirements of New York's C.P.L.R. 311, which is otherwise a permissible means of service on corporations under Fed.R.Civ.P. 4(h)(1). *See China Mariners' Assurance*, 1999 WL 126921, at *3. Specifically, Defendants contend that the individual to whom copies of the Summons and Complaint were delivered, Wilson Lata, a garage attendant, was neither "an officer, director, managing or general agent, or cashier or assistant cashier," nor otherwise an agent authorized to receive service, within the meaning of C.P.L.R. 311. Defendants have submitted affidavits to this effect from both Mr. Lata and Mr. Vassallo. (Order to Show Cause, Affidavit of Wilson Lata ("Lata Aff.") ¶¶ 2–3; Vassallo Aff. ¶¶ 20–21.)

Plaintiffs have chosen not to contest this assertion.[4] Rather, they argue that the

---

**3.** At oral argument, Defendants' counsel conceded that his clients have no justification for their delay. In fact, counsel stated that Mr. Vassallo chose simply to disregard his advice to appear and contest Plaintiffs' claims on the merits, letting the matter proceed against Defendants in default.

**4.** In a Report and Recommendation in a separate action involving substantially the same parties, Magistrate Judge Freeman found that parking garage attendants such as those employed by Defendants do not qualify as managing agents or cashiers under C.P.L.R. 311. *See Muniz v. Vassallo*, No. 00 Civ. 2543(LMM)(DF), Report and Recommenda-tion 15–17 (S.D.N.Y. June 25, 2001) ("*Muniz Report*"), attached as Ex. C. to Order to Show Cause. Defendants claim that this Report collaterally estops Plaintiffs from asserting that personal jurisdiction existed over the corporate Defendants in this action. (Defs. Mem. at 3, 6.) Judge Freeman's Report, which has not in any case yet been adopted by the Court, clearly has no preclusive effect on the instant matter. Although Judge Freeman found service was improper on the corporate defendants in that case, *see id.* at 17, the defendants in *Muniz*, unlike Defendants here, had not signed a written acknowledgment of service. The Court also notes that any reli-

corporate Defendants waived any argument as to defective service of process inasmuch as their previous counsel, Annette Wenzel and Jay Gold, wrote a letter to Plaintiffs' counsel explicitly acknowledging receipt of service and, in effect, waiving any defects in service. (Letter of Annette W. Wenzel, Esq., Feb. 2, 2000 ("Wenzel Letter," or "acknowledgment letter"), attached as Ex. G to Order to Show Cause.) The letter, written in response to correspondence from Mr. Greenberg requesting that Defendants "appear and concede the validity of service," (Letter of Leon Greenberg of Feb. 2, 2000 ("Greenberg Feb. 2, 2000 Letter"), attached as Ex. M. to Greenberg Aff., at 1), states, "As per you[r] request, we are providing to you written acknowledgment of personal receipt of the Complaint [filed by Mr. Velez et al.]." The letter further states, "Personal service was received by the following corporations," then lists each of the corporate Defendants in this action. No other matters are discussed in the letter; indeed, the subject line states, "Acknowledgement of Personal Service; *Velez v. Vassallo*".[5]

Despite the clear import of the letter, Defendants have submitted affidavits from their previous counsel, as well as from Mr. Vassallo, claiming that it is not what it appears to be. Ms. Wenzel states that the letter was not intended as a waiver of rights with respect to service of process, but merely as an acknowledgment "that Mr. Gold's office had received copies of the complaint." (Order to Show Cause, Affidavit of Annette Wenzel ("Wenzel Aff.") ¶ 4.) Ms. Wenzel further states that she told Mr. Greenberg that she was speaking

with him in "the limited capacity" of exploring a potential settlement, and that "Mr. Gold was not appearing in the case or taking any act to deprive the defendants of a defense if the matter were to proceed to litigation." (Wenzel Aff. ¶ 3.) Ms. Wenzel, who is an accountant and an attorney licensed to practice law in Pennsylvania, states that her discussions with Mr. Greenberg were "closely supervis[ed]" by Mr. Gold and that Mr. Gold "approved the text" of the acknowledgment of service. (*Id.* ¶¶ 1, 3–4.)

Mr. Vassallo also affirms that he authorized Mr. Gold only to enter into settlement discussions with Mr. Greenberg. (Vassallo Aff. ¶ 22.) Mr. Vassallo claims that Mr. Gold is merely his accountant, and that, although Mr. Gold, "it turns out, is also a lawyer," he does not serve as Defendants' lawyer. (*Id.*) Mr. Vassallo states, "Mr. Gold was never authorized to appear in the case or much less, accept service of process of the lawsuit." (*Id.*) For his part, Mr. Gold affirms that he is an accountant and a lawyer admitted to the New York bar, but states that he was "not representing defendants in the litigation or admitting service," and that Mr. Greenberg understood this. (Order to Show Cause, Affidavit (First) of Jay Gold ("First Gold Aff.") ¶ 2.) Because Mr. Greenberg supposedly knew of this lack of actual authority, Defendants argue, he was not entitled to rely on Mr. Gold's or Ms. Wenzel's ostensible authority—as attorneys conducting negotiations on behalf of parties to a lawsuit—to acknowledge service of process. (Defs. Mem. at 8.)

Mr. Greenberg vigorously contests the above characterization of events, claiming

---

ance that Defendant Vassallo, in his individual capacity, puts on Judge Freeman's Report is equally misplaced. This point, and the propriety of personal service on Mr. Vassallo in general, are discussed *infra,* section I(A)(2).

5. The letter does not contain an acknowledgment of service on behalf of Mr. Vassallo; Plaintiffs' attorney contends that this was a mere oversight. (Greenberg Aff. ¶ 12.)

that "[w]hat was understood and discussed was that Mr. Gold was the defendants' attorney and was empowered to represent the defendants, as their attorney, in our dealings." (Greenberg Aff. ¶ 10.) Mr. Greenberg also points out that no purpose would have been served by his requesting a document that simply acknowledged that Defendants' counsel had copies of the Summons and Complaint in their physical possession. (*Id.* ¶ 12.) Mr. Greenberg has submitted contemporaneous time records documenting his conversations with Mr. Gold and Ms. Wenzel, as well as the letter he wrote to Ms. Wenzel urging her to advise her client not to waste time and money disputing service of process. (*Id.,* Ex. J (time records), Ex. M (Greenberg Feb. 2, 2000 Letter).) As the letter notes, the time for service had not expired and thus, if Defendants did not acknowledge service, they could simply be reserved in accordance with proper procedure. (Greenberg Feb. 2, 2000 Letter.)[6] It is in response to Mr. Greenberg's letter that Ms. Wenzel sent her February 2, 2000 letter. Not until weeks later, Plaintiffs' contend, after Mr. Blum had been retained as Defendants' counsel, did Defendants assert to Plaintiffs' counsel that they planned to contest service of process. (Greenberg Aff. ¶ 16.) Nevertheless, as noted, Defendants never appeared in the litigation to contest the adequacy of service of process until filing the instant motion.

■ Mr. Gold's and Ms. Wenzel's assertions that they intended the acknowledgment letter merely to confirm that Mr. Gold's office had received copies of the Summons and Complaint are belied not only by the unambiguous language of the letter itself, but by common sense. The letter executed by Ms. Wenzel (after having been approved by Mr. Gold) (Wenzel Aff. ¶ 4), unambiguously and without limitation, acknowledges service upon the corporate Defendants. The meaning and purpose of the document are thus clear on its face. There is no need to hold a hearing on Ms. Wenzel's and Mr. Gold's credibility with respect to their purported beliefs as to the significance of what they were signing. These beliefs are irrelevant, as are their supposed statements to Mr. Greenberg as to the meaning of the letter. Such "extrinsic or parol evidence is not admissible to create an ambiguity in a written agreement which is otherwise clear and unambiguous." *Del Vecchio v. Cohen,* 288 A.D.2d 426, 428, 733 N.Y.S.2d 479, 481 (2d Dep't 2001); *see also Investors Ins. Co. of Am. v. Dorinco Reinsurance Co.,* 917 F.2d 100, 104 (2d Cir.1990) ("Parol evidence may be admitted to explain a writing only when the terms of the writing itself are ambiguous."). Further, as Plaintiffs point out, no purpose would have been served by, and there is no reason to believe that Plaintiffs' counsel sought, a document that merely stated that Mr. Gold's office had a copy of the Complaint. Indeed, Plaintiffs' counsel made clear that he was seeking a waiver of the right to contest service. (Greenberg Feb. 2, 2000 Letter.) The Court thus finds that the acknowledgment letter unambiguously acknowledges proper service on the corporate Defendants.

■ The Court further finds that the letter is binding upon Defendants under basic agency principles. It is well established under New York law[7] that even in

---

6. The letter was written on February 2, 2000; in their opposition papers, Plaintiffs indicate that the 120–day period set by Fed.R.Civ.P. 4(m) would not expire until March 14, 2000. The initial Complaint in this action was filed on November 15, 1999.

7. Neither party explicitly addresses whether New York or the federal common law of agency should govern the issues here. Plaintiffs cite authorities applying New York law; the sole case Defendants cite applies Wisconsin law. This Court need not rule on which law

the absence of actual authority, an agent cloaked with apparent authority may bind the principal. *See, e.g., Morrison v. Budget Rent A Car Sys., Inc.*, 230 A.D.2d 253, 256, 657 N.Y.S.2d 721, 723 (2d Dep't 1997) (citing *Hallock v. State of New York*, 64 N.Y.2d 224, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984)); *Recyclers Consulting Group, Inc. v. IBM–Japan, Ltd.*, No. 96 Civ. 2137(JFK), 1997 WL 615014, at *3 (S.D.N.Y. Oct.3, 1997). Such apparent authority arises from "words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction." *Hallock*, 64 N.Y.2d at 231, 485 N.Y.S.2d at 513, 474 N.E.2d 1178. The principal will be bound by the agent's actions to the extent that the third party reasonably relies on those actions. *See id.; Recyclers Consulting Group*, 1997 WL 615014, at *3; *Mitsubishi v. Keystone Camera Corp.*, No. 89 Civ. 8595(JFK), 1990 WL 16090, at *3 (S.D.N.Y. Feb.13, 1990). The list of such potentially binding actions includes receipt, and acknowledgment of receipt, of service of process. *See Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272, 428 N.Y.S.2d 890, 893–94, 406 N.E.2d 747 (1980); *Recyclers Consulting Group*, 1997 WL 615014, at *4; *Leo v. Gen. Elec. Co.*, 111 F.R.D. 407, 411 (E.D.N.Y.1986); *see also Morrison*, 230 A.D.2d at 256, 657 N.Y.S.2d at 723 (upholding pre-answer stipulation waiving defense of no personal jurisdiction).

Here, the relevant conduct of the principal, which is determinative of whether apparent authority exists, is not in dispute. Rather than communicate directly with Plaintiffs' counsel, Defendants (through Mr. Vassallo) appointed Mr. Gold to discuss the lawsuit with him. Though Mr. Vassallo claims that he authorized Mr. Gold only to discuss settlement, he nevertheless makes no assertion that he communicated this limitation to Plaintiffs' counsel, or that he ever even spoke to Plaintiffs' counsel. On the contrary, Mr. Vassallo states that he had Mr. Gold initiate contact with Plaintiffs' counsel. Thus, after the commencement of the lawsuit (and until the arrival of Mr. Blum), Mr. Gold's and Ms. Wenzel's phone discussions with Mr. Greenberg constituted Defendants' sole communication with him, and Mr. Gold and Ms. Wenzel were Defendants' sole representatives. Further, although Mr. Vassallo claims that Mr. Gold is only his accountant, not his attorney, Mr. Vassallo acknowledges that "Mr. Gold, it turns out, is also a lawyer." (Vassallo Aff. ¶ 22.) Ms. Wenzel, Mr. Gold's assistant, is also a lawyer. Indeed, Mr. Gold's letterhead, which was sent to Plaintiffs' counsel, reads, "Jay H. Gold/Attorney at Law" (*see* Wenzel Letter), and Mr. Gold's and Ms. Wenzel's affidavits clearly imply that they communicated to Mr. Greenberg their status as lawyers. (First Gold Aff. ¶ 2; Wenzel Aff. ¶ 3; *see also* Greenberg Aff., Ex. J) (Mr. Greenberg's contemporaneous time records, noting conversation with "[W]enzel, w/ [J]ay [G]old, attorney for Vassallo.")

The only factual dispute, therefore, is whether or not Ms. Wenzel and Mr. Gold informed Mr. Greenberg that they were representing Defendants solely for the purposes of settlement negotiations. However, even assuming they did make such an oral representation to Mr. Greenberg at an earlier time, their subsequent execution of the written acknowledgment of service, without qualification, entitled

---

applies, since under the general principles of agency incorporated into both New York and federal law, the outcome would be the same.

*See Orient Overseas Container Line v. Kids Int'l Corp.*, No. 96 Civ. 4699(DLC), 1999 WL 76840, at *2 n. 1 (S.D.N.Y. Feb.11, 1999).

him to believe that they had either sought, or had always had, authorization to make such an acknowledgment. The record shows both that Mr. Greenberg, by his February 2, 2000 letter, explicitly asked Ms. Wenzel to "advise your client to appear and concede service of process," and that Ms. Wenzel's reply letter, which begins, "As per you[r] request . . .", unequivocally acceded to that request. Moreover, prior to writing the letter, Ms. Wenzel had received copies of the affidavits of service from Mr. Greenberg (*see* Greenberg Feb. 2, 2000 Letter), and was told by Mr. Greenberg that he would not negotiate a settlement with her until she wrote the letter (Wenzel Aff. ¶ 4; First Gold Aff. ¶ 3). It was thus eminently reasonable for Mr. Greenberg to assume from the circumstances that Ms. Wenzel had authority to acknowledge service on Defendants' behalf, regardless of whatever she had supposedly said earlier.[8] Indeed, nowhere in Mr. Gold's and Ms. Wenzel's affidavits do they actually assert that they told Mr. Greenberg they were not authorized to acknowledge service; nor, in fact, do they even state that they were not authorized to execute the acknowledgment letter. They merely state that they were not authorized to appear in the lawsuit or to "tak[e] any act that would prejudice Defendants." (Wenzel Aff. ¶ 5; First Gold Aff. ¶ 4.) These assertions are insufficient to raise a factual question as to whether it was reasonable for Mr. Greenberg to rely on their manifest appearance of authority. In sum, therefore, the Court concludes that Defendants, by sending two attorneys as their exclusive agents for communicating with Plaintiffs' counsel, after the commencement of a lawsuit against them, cloaked these agents with apparent authority to sign the acknowledgment of service of process on their behalf, which they in fact signed.

 In any event, the record indicates that Defendants, by their failure to repudiate the letter until now, have effectively ratified it and thus cannot avoid its consequences. Where the principal knows of an unauthorized act taken on his behalf and remains silent, he is deemed to have ratified the act. *See C.E. Towers Co. v. Trinidad & Tobago Airways Corp.*, 903 F.Supp. 515, 526 (S.D.N.Y.1995). "When an act is done without authority, under an assumed agency, it is the duty of the principal to disavow and repudiate it in a reasonable time after information of the transaction if he would avoid responsibility thereof." *Id.* (citations and internal quotation marks omitted); *see also Suncoast Capital Corp. v. Global Intellicom, Inc.*, 280 A.D.2d 281, 281–82, 719 N.Y.S.2d 652, 653 (1st Dep't 2001)(failure of defendants to object to authority of attorney to enter stipulation until six months later, when plaintiff sought to enforce stipulation, constituted ratification of attorney's authority). Ratification may be inferred from the "knowledge of the principal coupled with a failure to timely repudiate, where the party seeking a finding of ratification has in some way relied on the principal's silence." *Trustees of the Am. Fed. of Musicians and Employers' Pension Fund v. Steven Scott Enters., Inc.*, 40 F.Supp.2d 503, 511 (S.D.N.Y.1999)(quoting *Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland Ltd.*, 835 F.2d 32, 36 (2d Cir.1987)).

Here, the record reveals no action taken by Defendants, before the instant motion, to repudiate the letter in question. The letter was signed on February 2, 2000, and documents in the record make clear that

---

**8.** As noted, Mr. Greenberg denies that Ms. Wenzel ever stated that she had only limited

authority in their negotiations.

Defendants knew of the letter (and indeed had a copy of it) shortly thereafter. Plaintiffs submitted the letter to the Court with their motion for a default judgment on March 7, 2000. (Affidavit of Leon Greenberg in Support of Motion for Default, Ex. D.) Further, Mr. Greenberg's affidavit in support of that motion expressly discusses the letter. (*Id.* ¶ 5.) Plaintiffs' moving papers were mailed to Mr. Blum, Defendants' attorney, who does not dispute that he received them. Though Mr. Blum apparently told Mr. Greenberg that he was going to appear in the litigation and contest service of process (*id.* ¶ 6), he does not claim that he told Mr. Greenberg that Defendants were repudiating the letter acknowledging service of process or that the letter was unauthorized. More importantly, Defendants never appeared in the litigation to contest the validity of the letter, despite knowledge of its existence and notice that Plaintiffs were relying on it. In fact, although he wrote twice to the Court, Mr. Blum never disputed the authority of Mr. Gold and Ms. Wenzel to execute the letter. In his April 21, 2000 letter to this Court, Mr. Blum wrote that Defendants intended to appear in the lawsuit and move to vacate the default; he therefore requested a stay of the inquest. (Greenberg Aff., Ex. Q.) Mr. Blum stated that one of the grounds upon which Defendants would challenge the default was improper service of process, referring to "sewer service" on Mr. Lata at the garage. Despite this statement, which unarguably was made with knowledge that Plaintiffs' motion for a default had relied, at least in part, on the service-acknowledgment letter signed by Ms. Wenzel, Mr. Blum made no mention of the supposed fact that the letter was written without authority. In fact, Mr. Blum did not even contest the validity of the letter after Mr. Greenberg, in opposing the request for a stay, again submitted a copy of the letter to this Court. (Letter of Leon Greenberg, Apr. 24, 2000, Ex. F.) Mr. Blum wrote nothing in response, and did not otherwise contact the Court until July 6, 2000. Even in his letter of that date, Mr. Blum said nothing about Mr. Gold's and Ms. Wenzel's supposed lack of authority to acknowledge service. (Greenberg Aff., Ex. R.) As described above, nothing further was heard from Mr. Blum or Defendants until more than a year later, when the instant motion was filed. It is thus clear that Defendants cannot now avoid the consequences of the letter, a year and a half after they gained knowledge of its existence. This prolonged silence constitutes ratification.

Finally, it is worth noting that the corporate Defendants obviously could not, and do not, contest that they had actual notice of the lawsuit. Though not dispositive of the question of adequacy of service of process, such notice is "evidence that the legislative goal of fair notice, which underlies the rules of service of process, has been fulfilled." *See Kuhlik v. Atlantic Corp.,* 112 F.R.D. 146, 149 (S.D.N.Y.1986); *cf. OR.EN. Orobia Eng'g S.R.L. v. Nacht,* No. 97 Civ. 4912(SAS), 1998 WL 730562, at *5 (S.D.N.Y. Oct.19, 1998) (noting that courts have construed C.P.L.R. 311 "very liberally" and upheld service by any means "reasonably calculated to give notice" to the corporation) (internal citations and quotation marks omitted). A finding that Defendants have waived their objections to service of process fully comports with the purpose of the Federal Rules to avoid procedural gamesmanship. As another judge in this Court noted in a remarkably similar context,

> [t]he Federal Rules do not suggest that a defendant may halfway appear in a case, giving plaintiff and the court the impression that he has been served, and at the appropriate time, pull failure of service out of a hat like a rabbit in order

to escape default judgment. To countenance this train of events would elevate formality over substance and would lead plaintiffs to waste time, money, and judicial resources pursuing a cause of action. *Adidas Sportschuhfabriken Adi Dassler Stiftung & Co. v. Cheung*, No. 87 Civ. 8989(JFK), 1990 WL 48063, at *5 (S.D.N.Y. Apr.10, 1990) (quoting *Broadcast Music, Inc. v. M.T.S. Enters.*, 811 F.2d 278, 282 (5th Cir.1987)).

Accordingly, this Court concludes that the corporate Defendants have waived their right to contest service of process, and therefore finds no merit to their motion to vacate the Judgment against them as void for lack of personal jurisdiction.

### 2. Defendant Vassallo

■ Defendant Vassallo also argues that the Court never obtained personal jurisdiction over him because of defective service of process. The affidavit of service on Mr. Vassallo indicates that on January 12, 2000, copies of the Summons and Complaint were left with Wilson Lata at 444 East 82nd Street in Manhattan, and mailed to that address on January 18, 2000. (Order to Show Cause, Ex. H.) Defendants concede that N.Y. C.P.L.R. 308 permits service upon an individual through a person of suitable age and discretion at the individual's "actual place of business." Defendants dispute, however, that 444 East 82nd Street, a parking garage managed and/or owned by Vassallo and his companies, is Mr. Vassallo's "actual place of business" within the meaning of the

rule. In support of this contention, Mr. Vassallo states in his affidavit, simply, "[M]y place of business is not located at East 82nd St. It is located at [JK Improvements'] office at East 80th St." (Vassallo Aff. ¶ 18.) [9]

Plaintiffs dispute these assertions on numerous grounds. Plaintiffs point to numerous public and personal records, all listing 444 East 82nd Street as the mailing address for Mr. Vassallo and/or corporations of which he is principal. (Greenberg Aff. ¶ 4, and accompanying exhibits.) Plaintiffs also refer to numerous items of correspondence relating to the instant action, including several letters in Defendants' own moving papers, that were sent to Mr. Vassallo at the 82nd Street address without being returned as undeliverable. (Greenberg Aff. ¶ 3; Order to Show Cause, Exs. B–2, D.) Plaintiffs argue that the foregoing evidence establishes East 82nd Street as Mr. Vassallo's "actual place of business" as a matter of law, or, at the very least, estops Mr. Vassallo from denying as much.

■ As a preliminary matter, the Court notes that, in challenging personal jurisdiction by a Rule 60(b)(4) motion after a default judgment has been entered, Defendant Vassallo bears the burden of establishing his claim that service was improper. *See Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir.1986); *China Mariners' Assurance*, 1999 WL 126921, at *3; *Miller v. Jones*, 779 F.Supp. 207, 210 (D.Conn.1991)(Cabranes, J.); *Rohm &*

---

9. As mentioned, Defendants claim that Judge Freeman's Report and Recommendation in the *Muniz* litigation collaterally estops Plaintiffs from asserting the propriety of service on Mr. Vassallo at the East 82nd Street address. (Defs. Mem. at 3, 6.) This claim has no merit. Although it is true that Judge Freeman recognized 445 East 80th Street as Vassallo's "actual place of business" within the meaning of C.P.L.R. 308(2), she did so based on Mr. Vassallo's own admission to the court. *See Muniz* Report at 9. Judge Freeman specifically declined to make any finding as to whether any of the defendants' other garages, including the one at 444 East 82nd Street, might also constitute Mr. Vassallo's "actual place of business" for the purpose of service of process. *See id.*

*Haas v. Aries,* 103 F.R.D. 541, 544 (S.D.N.Y.1984).[10]

■ The Federal Rules permit service on individuals, just as service on corporations, to be made pursuant to the law of the state in which the district court is located. *See* Fed.R.Civ.P. 4(e)(1). Under New York law, personal service may be effected on an individual by "delivering the summons within the state to a person of suitable age and discretion at the [person's] actual place of business ... and by mailing the summons to the person to be served at his or her last known residence or ... actual place of business." N.Y. C.P.L.R. 308(2). New York courts have construed "actual place of business" to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a "clear identification of the work performed by her with that place of business." *King v. Galluzzo Equip. & Excavating, Inc.,* No. 00 Civ. 6247, 2001 WL 1402996, at *4 (E.D.N.Y. Sept.8, 2001); *see also Columbus Realty Inv. Corp. v. Weng–Heng Tsiang,* 226 A.D.2d 259, 259, 641 N.Y.S.2d 265, 266 (1st Dep't 1996); *Louis Greenberg, Inc. v. Meinwald,* 225 A.D.2d 321, 321, 638 N.Y.S.2d 624, 625 (1st Dep't 1996); *Bridgehampton Nat'l Bank v. Watermill Heights Assocs.,* 157 Misc.2d 246, 250, 596 N.Y.S.2d 321, 324 (N.Y.Sup.1993).

■ It is clear from this standard that a defendant can have more than one "actual place of business" for the purpose of service of process. *See, e.g., Gibson,*

*Dunn & Crutcher LLP v. Global Nuclear Servs. & Supply, Ltd.,* 280 A.D.2d 360, 361, 721 N.Y.S.2d 315, 317 (1st Dep't 2001)(finding service proper at particular address even though "defendant may have conducted business elsewhere at times"); *Columbus Realty,* 226 A.D.2d at 259, 641 N.Y.S.2d at 266 ("[I]nasmuch as appellant was an officer and co-owner of the business where CPLR 308(2) service was made ... it is not significant that she worked mainly from her house rather than the place of business."); *King,* 2001 WL 1402996, at *4 & n. 9 (defendant's actual place of business was a location where he regularly transacted business despite the fact that he "may have worked frequently, or even primarily, from a different location"). Indeed, the language of C.P.L.R. 308(6) confirms that a person can have more than one "actual place of business": the subsection defines "actual place of business" as including "*any* location that the defendant, through regular solicitation or advertisement, has held out as its place of business." N.Y. C.P.L.R. 308(6)(emphasis added); *see also* C.P.L.R. 308 practice commentary C308:7 (McKinney 2001)("Such an address may have been established by the defendant solely for the convenience of receiving business correspondence and is not a place where any of the defendant's actual business activities are conducted."). By holding out a particular address to the public, a defendant is precluded from denying that address constitutes his "actual place of business." *See Vid v. Kaufman,* 282 A.D.2d 739, 740, 724

---

**10.** Although caselaw is mixed on this issue (*i.e.,* which party has the burden under Rule 60(b)(4)), *see Popper v. Podhragy,* 48 F.Supp.2d 268, 271 n. 5 (S.D.N.Y.1998)(collecting cases), this Court agrees with the conclusion that, where a defendant was on notice of the initial proceedings, "it is not unfair to place the burden on a defendant who has chosen to contest jurisdiction after judgment under Rule 60(b) rather than at the time of trial pursuant to Rule 12." *Rohm & Haas,* 103 F.R.D. at 544; *see also Bally Exp. Corp.,* 804 F.2d at 401 ("If the defendant, after receiving notice, chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a post-judgment rule 60(b)(4) motion.").

N.Y.S.2d 756, 757 (2d Dep't 2001)(finding doctor's allegedly former office was nonetheless his "actual place of business" where, *inter alia,* the address in question was listed with the state medical directory and professional licensing agency); *Gibson, Dunn,* 280 A.D.2d at 361, 721 N.Y.S.2d at 317 ("[H]aving ... effectively held out 485 Madison Avenue as his business address, and induced plaintiff's reliance thereon, this defendant cannot disclaim it as his 'actual place of business.' "); *Melton v. Brotman Foot Care Group,* 198 A.D.2d 481, 482, 604 N.Y.S.2d 203, 205 (2d Dep't 1993)(by furnishing address to New York State Division of Professional Licensing Services, defendants were estopped from arguing that service was improper because Summons and Complaint were mailed to that address). In *Gibson, Dunn,* for example, the court rejected the defendant's disavowal that a particular address was his actual place of business because, *inter alia,* he was vice-president of one company at that address and had proprietary interests in two others at that address, and he had received business mail, including correspondence from the plaintiff itself, at that address. *Id.* at 361, 721 N.Y.S.2d at 317.

Here, Defendant Vassallo does not dispute that he owns and operates the parking garage at East 82nd Street. Nor does he dispute Plaintiffs' numerous allegations linking him and various corporate Defendants with 444 East 82nd Street. Plaintiffs have proffered substantial documentation establishing that Mr. Vassallo holds out 444 East 82nd Street as his place of business, or, at the very least, as his business mailing address. This documentation, of which neither the authenticity nor substance has been contested, includes the following: confirmations from the Post Office that mail is delivered to Mr. Vassallo, and to Garden Parking Corporation, at 444 East 82nd Street (Greenberg Aff., Ex. A);

information recorded with the New York Department of State not only listing 444 East 82nd Street as the executive office address of corporate Defendants Cross Garage Corp., Double Garage Corp., and 60th Storage Corp., as well as listing Joseph Vassallo as chairman of the board of these corporations, but also identifying 444 East 82nd Street as Vassallo's address (*id.,* Ex. B); information recorded with the New York Department of State designating 444 East 82nd Street as the address, and Joseph Vassallo as the agent, for service of process on Defendants Garden Parking Corp., Wall Street Garage Parking Corp., and 331 50th Street Parking Corp. (*id.,* Ex. C); correspondence from several of Mr. Vassallo's own banks to Mr. Vassallo at 444 East 82nd Street (*id.,* Ex. F); and unreturned correspondence dated January 24, 2000 (that is, during the pendency of the litigation) from Plaintiffs' counsel to numerous corporate Defendants, as well as Mr. Vassallo, at 444 East 82nd Street (*id.,* Ex. H). Plaintiffs have also submitted records indicating that Mr. Vassallo listed 444 East 82nd Street as his address on two different motor vehicle registrations (*id.,* Ex. D), as well as in connection with the leasing of a third automobile (*id.,* Ex. E). Further, Defendants' own exhibits include numerous items of correspondence sent to Mr. Vassallo, as well as to certain corporate Defendants, at the East 82nd Street address. (Order to Show Cause, Exs. B–2, D.) Finally, Plaintiffs have submitted deposition testimony of Mr. Vassallo, taken in connection with another proceeding in this Court, in which he states that he himself resides at 444 East 82nd Street, and that the place of business of JK Improvements, which Vassallo admits he owns, is at 444 East 82nd Street. (Letter of Leon Greenberg to Hon. Lewis A. Kaplan, Aug. 31, 2001, and attachment.)

The failure of Defendants even to contest the record made by Plaintiffs regarding the East 82nd Street location, coupled with Defendants' own submission of exhibits supporting Plaintiffs' allegations, warrants a finding that 444 East 82nd Street is Mr. Vassallo's actual place of business for the purpose of service of process. Indeed, Mr. Vassallo has alleged no facts concerning his "actual place of business"—other than his bald statement that it is not at 444 East 82nd Street but on East 80th Street—that, if proven, would entitle him to relief.[11] Mr. Vassallo's conclusory, unsubstantiated statement that East 82nd Street is not his actual place of business is patently insufficient to satisfy his burden of demonstrating otherwise. Accordingly, this Court finds no issue of fact as to the location of Mr. Vassallo's actual place of business for the purpose of service of process, and thus concludes that an evidentiary hearing on this issue is unwarranted. Cf. Greene v. WCI Holdings Corp., 136 F.3d 313, 316 (2d Cir.1998)(finding that district court has discretion to deny oral hearing under Rule 12(d) where party has had meaningful opportunity to present its case).

In sum, the Court finds that service on Mr. Vassallo was proper under C.P.L.R. 308(2), and recommends that Mr. Vassallo's motion to vacate the Judgment for lack of personal jurisdiction be denied.

## B. Subject Matter Jurisdiction

Defendants also challenge the Judgment against them on the basis of subject matter jurisdiction, arguing that the Court lacked jurisdiction over the action because they do not fall within the scope of coverage of the Fair Labor Standards Act. (Defs. Mem. at 4–5.) In the Amended Complaint, Plaintiffs allege federal question jurisdiction on the grounds that their claims arose under the FLSA generally, 29 U.S.C. §§ 201–219, and in particular under 29 U.S.C. § 216(b). The latter provision provides a right of action to any employee whose employer violates the provisions of § 206 or § 207 of the Act, which govern wages and hours, respectively. See 29 U.S.C. §§ 206, 207. Section 206(a) mandates that "[e]very employer" pay a minimum wage to "each of his employees who ... is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206. Section 207(a)(1) mandates the payment of overtime wages, and uses identical language to define the scope of its coverage. "Enterprise engaged in commerce" is defined at 29 U.S.C. § 203(s)(1), and includes any enterprise that has employees "engaged in commerce ..., or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any per-

---

**11.** Defendants have also submitted an equivocal affidavit from Mr. Lata, an attendant at the East 82nd Street garage, that creates the impression that he never received copies of the Summons and Complaint for Mr. Vassallo or any of the other named Defendants in this action. If this is indeed what Mr. Lata is saying, it is directly contradicted by statements of Defendants' own attorney, who in his April 21, 2000 letter to this Court specifically described the way in which Mr. Lata had been served. (Greenberg Aff., Ex. Q.)

Mr. Lata also states, in support of his contention that he did not receive copies of the Summons and Complaint, that no mail is received at the East 82nd Street garage. (Lata Aff. ¶¶ 5–6.) In light of the extensive record described above, relating to mail sent to 444 East 82nd Street, the Court puts no weight on this assertion. Indeed, such a patently false sworn statement from one of Defendants' own employees casts doubt on the veracity of Defendants' application as a whole. Moreover, the Court notes that Mr. Vassallo himself does not even assert that he never received the copies of the Summons and Complaint that were delivered and mailed to 444 East 82nd Street.

son," and that has gross annual revenues of $500,000 or more.

In the Amended Complaint, Plaintiffs allege that they were employees of Defendants; that Defendants owned and operated numerous parking garages in New York City; that Defendants constituted an enterprise engaged in commerce; and that Defendants' gross revenues exceeded $500,000. (Am.Compl.¶¶ 3–9, 11, 13.) In the instant motion, Defendants claim that Plaintiffs, who "merely parked cars," were not engaged in commerce. (Defs. Mem. at 5.) Defendants further argue that their gross revenues do not exceed $500,000 per year. On these two grounds, Defendants claim they cannot be liable as an "enterprise engaged in commerce" as defined at 29 U.S.C. § 203(s)(1), and that this deprives the Court of subject matter jurisdiction over this action.

Defendants offer scant evidence in support of these assertions. Mr. Vassallo affirms that "[n]either JK, nor I have ever earned $500,000 in a year, nor are we engaged in interstate commerce or the movement of goods across state lines." (Vassallo Aff. ¶ 7.) Additionally, Mr. Gold, the attorney and accountant, affirms that he has represented Mr. Vassallo and his wife for more than ten years in financial matters relating to their personal and business activities, and that "[n]either of the Vassallos personally, nor JK Improvements, Inc. have ever earned $500,000 or more per year in gross revenues." (Order to Show Cause, Affidavit (Second) of Jay Gold ("Second Gold Aff.") ¶ 3.) Although Mr. Gold states that he has prepared tax returns and "other financial documents" for the Vassallos and their business (*id.*), Defendants do not attach any such documents or tax returns to their submissions.

It seems clear that Defendants' motion would have no chance of succeeding on the merits. Defendants' assertion that there is an insufficient nexus between Plaintiffs' work and interstate commerce radically misapprehends the nature of enterprise coverage under the FLSA.[12] Since 1974, when Congress significantly broadened the coverage of the FLSA, the definition of "enterprise engaged in commerce" has included any company doing the requisite dollar amount of business "that has employees handling ... goods or materials that have been moved in or produced for commerce by any persons." 29 U.S.C. § 203(s). *See generally Archie v. Grand Cent. P'ship*, 997 F.Supp. 504, 529–30 (S.D.N.Y.1998)(Sotomayor, J.) (discussing effect of 1974 amendments). Thus, "the employee does not himself need to be involved in an activity that affects interstate commerce," *see Boekemeier*, 86 F.Supp.2d at 285; even a "local laundry" is covered if the soap it uses moved in interstate commerce, *see Marshall v. Baker*, 500 F.Supp. 145, 151 (N.D.N.Y.1980), *quoted in Archie*, 997 F.Supp. at 530. Indeed, it has been noted that the 1974 amendments effectively signify "that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." *Archie*, 997 F.Supp. at 530 (quoting *Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 501–02 (5th Cir.1975)). As the recent *Archie* opinion points out, "[s]ince 1974,

---

12. Plaintiffs do not argue that they come within the scope of the Act's individual or "traditional" coverage. Under this theory, any employee "engaged in commerce or in the production of goods for commerce" is covered by the Act, irrespective of whether his employer is an enterprise engaged in commerce. 29 U.S.C. §§ 206(a), 207(a)(1); *see* *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 516–17, 93 S.Ct. 1138, 1141, 35 L.Ed.2d 463 (1973); *see also Boekemeier v. Fourth Universalist Soc'y in the City of New York*, 86 F.Supp.2d 280, 285–87 (S.D.N.Y.2000) (discussing separate standards for individual coverage and enterprise coverage).

courts facing the issue presented here have unanimously come to the same conclusion: local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Id.* at 530 (collecting numerous cases). In *Archie*, the goods in question included cleaning supplies and other everyday items such as radios, clipboards, and books, "some of which," the court concluded, "undoubtedly moved in interstate commerce to New York City." *Id.* Here, Defendants' employees handled cars that were brought to public parking garages in New York City; such cars surely epitomize "goods or materials that have been moved in or produced for" interstate commerce. Even Defendants do not attempt to argue otherwise. Defendants' assertion that Plaintiffs' work "did not encompass the production or handling of goods for commerce" (Defs. Mem.

at 5) is thus premised on a egregious misunderstanding, or a willful misreading, of the law.[13]

Defendants' other argument with respect to FLSA enterprise coverage, that they do not meet the $500,000 gross revenues threshold, appears equally baseless. As Plaintiffs note, Defendants proffer no evidence in support of Mr. Vassallo's and Mr. Gold's naked assertions that neither JK Improvements nor Mr. Vassallo has ever earned more than $500,000 a year. (Vassallo Aff. ¶ 7; Second Gold Aff. ¶ 3). More importantly, Defendants nowhere address the gross revenues of the *eight other* corporate Defendants that Plaintiffs have alleged, and that Defendants have not disputed, form a unified enterprise along with JK Improvements.[14]

Defendants conclusory assertions—that they are not an enterprise engaged in commerce and that their gross revenues do not

13. Indeed, even before the 1974 amendments, a court had no difficulty concluding that employees of a parking garage in downtown Washington, D.C., were engaged in interstate commerce. In *Brennan v. S & M Enters.*, 362 F.Supp. 595, 598 (D.D.C.1973), the court found enterprise coverage based on the theory that interstate commerce would be "impeded or abated without the services of the employees." Among other things, the court noted Washington, D.C.'s "unique geographic status," and found self-evident the proposition that parking garages in the District "facilitate interstate travel by commuters and shoppers from the surrounding Maryland and Virginia suburbs and by tourists from around the United States." *Id.* at 599. Needless to say, these observations (substituting New Jersey and Connecticut for Maryland and Virginia) apply with equal, if not greater force to parking lots in Manhattan. The only "parking" case cited by Defendants, *Pollard v. Herbert J. Siegel Org.*, 272 F.Supp. 821 (D.Md.1967), not only predates the 1974 amendments to the FLSA, but does not even deal with enterprise liability. Moreover, the work performed by the plaintiffs in that case, doormen of a private residence who "occasionally" parked cars, *id.*

at 823, has little similarity to the work performed by Plaintiffs here. Finally, and most significantly, although the court in *Pollard* ultimately found that Plaintiffs were not engaged in commerce, *see id.* at 826, the court expressly noted at the outset of its opinion that it had subject matter jurisdiction over Plaintiffs' claims, *see id.* at 823. The court's dismissal was thus on the merits. This essential distinction—between the subject matter jurisdiction of the district court and the merits of a given plaintiff's claim—is discussed immediately below.

14. Plaintiffs further argue that even the limited evidence in the record compels the inference that Defendants' gross revenues exceed $500,000. (Greenberg Aff. ¶ 20.) From Mr. Vassallo's admission that JK employs 40 workers, Plaintiffs estimate that Defendants' payroll costs are at least $350,000 a year. (*Id.*) Plaintiffs note that this figure does not include taxes, rents, and other operating expenses. (*Id.*) In fact, Plaintiffs have submitted a copy of an agreement leasing property to Defendant Beacon 76th Garage at an annual rent of $540,000. (Letter of Leon Greenberg, Feb. 8, 2002, attachment.)

exceed $500,000—are thus premised on a fundamental misunderstanding of the scope of the FLSA and are not supported by evidence sufficient to merit a hearing. Nevertheless, given the Court's recommended disposition of Defendants' subject matter jurisdiction claim on other grounds, resolution of Defendants' motion on these grounds is unnecessary.

 Notwithstanding its evident lack of merit, this Court recommends the denial of Defendants' jurisdictional claim for a more fundamental reason. Defendants' claim, made in a motion under Rule 60(b)(4), is based on the assumption that whether or not their businesses constitute an "enterprise engaged in commerce" is a question of subject matter jurisdiction, and not of the merits of Plaintiffs' case. This Court disagrees with that assumption, and thus finds that Defendants allege no proper grounds for relief under Rule 60(b)(4).

 To prevail on a claim under the FLSA, a plaintiff must, of course, demonstrate that the defendant is covered by the Act, such as by showing that the defendant constitutes an enterprise engaged in commerce. However, this required showing is simply an element of the cause of action. *See Marchak v. Observer Publs., Inc.,* 493 F.Supp. 278, 282 (D.R.I.1980). A plaintiff's failure to make this showing constitutes a failure on the merits. As the district court in *Marchak* observed, "[E]ven if it were to be found that [defendant] is not an 'enterprise' within the meaning of the statute, this would not affect the Court's subject matter jurisdiction." *Id.* at 282. Other courts have similarly recognized that whether or not a defendant is statutorily excluded from coverage under the FLSA goes to the merits of the claims against it and not to the jurisdiction of the Court. *See Freudenberg v. Harvey,* 364 F.Supp. 1087, 1090 (E.D.Pa.1973); *see also Reed v. Johnson,* No. 93 Civ. 1652, 1995

WL 562299, at *1 (E.D.La.1995) (following *Freudenberg* ).

It is true that courts sometimes refer to the plaintiff's obligation to prove a defendant's covered status as "jurisdictional." *See, e.g., Lamont v. Frank's Soup Bowl, Inc.,* No. 99 Civ. 12482(JSM), 2001 WL 521815, at *3 (S.D.N.Y. May 16, 2001) ("[T]here is clearly no federal jurisdiction over Plaintiff's claims for overtime wages because neither he nor his employer engaged in conduct over which Congress chose to exercise jurisdiction."); *Boekemeier,* 86 F.Supp.2d at 285 (whether defendant is an "enterprise," and whether plaintiff was "engaged in commerce," are "jurisdictional prerequisites"); *Monaia v. Grinell,* No. 96 Civ. 9769(LMM), 1997 WL 363813, at *1 (S.D.N.Y. July 1, 1997) (whether defendant is an "enterprise" is a "jurisdictional fact"). However, as discussed below, "jurisdiction" is an overused term, and one that is often used without explicit consideration of whether the court's "authority to adjudicate the type of controversy involved in the action" is really at stake. *Da Silva v. Kinsho Int'l Corp.,* 229 F.3d 358, 362 (2d Cir.2000) (quoting Restatement (Second) of Judgments § 11 (1980)). This Court therefore takes guidance from those opinions, discussed above, that have more squarely considered the issue of what is properly "jurisdictional" under the FLSA.

 Recent Second Circuit opinions regarding other statutes have affirmed the longstanding practice of "granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1188 (2d Cir.1996); *see also Da Silva,* 229 F.3d at 361; *Bleiler v. Cristwood Constr., Inc.,* 72 F.3d 13, 15 n. 1 (2d Cir. 1995). *See generally Fogel v. Chestnutt,*

668 F.2d 100, 105–07 (2d Cir.1981) (Friendly, J.). As the Court explained in *Nowak,*

> in cases where the asserted basis for subject matter jurisdiction is also an element of plaintiff's allegedly federal cause of action, we ask only whether— on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution. If so, then we assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits.

*Id.* at 1188. Dismissal for lack of subject matter jurisdiction is only proper where an alleged federal claim "clearly appears immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 1188 (quoting *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). Thus, in *Nowak,* the Court found that the plaintiff's ERISA claim, though arising out of events predating the Act's effective date, as provided by statute, nevertheless fell within the district court's federal question jurisdiction; dismissal of the claim should have been on the merits. *Id.* at 1191; *see also Bleiler,* 72 F.3d at 15 n. 1 (where neither defendant was an "employer" within the statutory definition of ERISA, dismissal should have been for failure to state a claim, not lack of subject matter jurisdiction).

More recently, the Second Circuit held that the statutory definition of "employer" under Title VII, which includes a fifteen-employee minimum, was not jurisdictional. *Da Silva,* 229 F.3d at 366. Thus, it concluded that subject matter jurisdiction existed in the case before it because the plaintiff's claim "alleged a violation by an employer that could plausibly be regarded with its parent company as a single employer, thereby potentially meeting the fifteen-employee requirement. Her ultimate failure to prove single employer status is not a ground for dismissing for lack of subject matter jurisdiction." *Id.* at 365. The Court noted that courts often dismiss "for lack of jurisdiction" when a plaintiff has failed to establish a threshold fact, without considering whether such dismissal might more properly be for failure to state a claim. *See id.* at 361; *see also* 2 Moore's Federal Practice § 12.30[1], at 12–36 (3d ed. 2000)("Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by federal law asserted as a predicate for relief—a merits-related determination."), *quoted in Da Silva,* 229 F.3d at 361.

Though its holdings in *Nowak* and *Da Silva* are limited to provisions in ERISA and Title VII, respectively, the Court's reasoning in both cases sweeps much more broadly. The opinions both contain expansive theoretical discussions of the jurisdiction/merits dichotomy, and both cite to wide-ranging cases dealing with other statutes and to general treatises on jurisdiction. *See Da Silva,* 229 F.3d at 361–65; *Nowak,* 81 F.3d at 1187–91. Further, the *Da Silva* opinion provides a generally applicable policy justification for narrowing the scope of issues that affect jurisdiction. As explained in the Restatement of Judgments, which the Court quotes with approval,

> "[w]hatever the context, the underlying question is how far to go in the direction of policing the boundaries of a court's subject matter jurisdiction, when the cost of intensive policing is to enlarge the vulnerability of the proceeding ... to belated attack after it has gone to judgment .... [T]he modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction."

*Id.* at 363 n. 2 (quoting Restatement § 11 cmt. e). Needless to say, such policy considerations bear directly on the instant matter. As the Court further noted, "the institutional requirements of a judicial system weigh in favor of narrowing the number of facts or circumstances that determine subject matter jurisdiction." *Id.* at 365.

Other judges in this Court have recognized the distinction between subject matter jurisdiction and failure on the merits in applying a variety of federal statutes. *See, e.g., Int'l Brotherhood of Teamsters v. Carey,* 163 F.Supp.2d 271, 278 (S.D.N.Y.2001)(dismissing RICO action for failure to state a claim, rather than lack of subject matter jurisdiction, because the "contested basis of jurisdiction [was] also an element of the plaintiff's federal claim") (citation and internal quotation marks omitted); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.,* 955 F.Supp. 220, 222 & n. 1 (S.D.N.Y.1997)(whether or not Lanham Act reaches Canadian sales goes to merits, not subject matter jurisdiction), *aff'd,* 152 F.3d 948, 1998 WL 169251 (2d Cir.1998); *Muhlrad v. Mitchell,* No. 96 Civ. 3568(DLC), 1997 WL 182614, at *4 n. 2 (S.D.N.Y. Apr.14, 1997) (whether state agency is "employer" under Labor Management Relations Act and National Labor Relations Act does not go to subject matter jurisdiction).

The foregoing persuades this Court that resolution of the question of whether or not Defendants actually are "an enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1) is an issue that goes to the merits of Plaintiffs' claims rather than the Court's subject matter jurisdiction. This conclusion is supported by those cases, discussed above, directly considering the FLSA, as well as by the reasoning of *Nowak* and *Da Silva.* This conclusion also fully comports with the text of the FLSA itself. Nowhere is the word "jurisdiction" even mentioned in the statutory provisions, which Defendants now invoke, that are applicable to Plaintiffs' cause of action.[15] Rather, the statute under which Plaintiffs sued, 29 U.S.C. § 216(b), provides simply that "[a]ny employer who violates the provisions of section 206 or section 207 of this title [which govern minimum wage and overtime] shall be liable to the employee or employees affected." To prove a violation of either § 206 or § 207, Plaintiffs would have had to demonstrate, *inter alia,* that Defendants constituted an enterprise engaged in commerce, *see* 29 U.S.C. §§ 206, 207; as mentioned, the term "enterprise engaged in commerce" (as well as other relevant terms such as "employee," "employer," and "commerce") is defined at 29 U.S.C. § 203. Of course, had this case proceeded to trial on the merits, Plaintiffs would have also had to prove, for example, that they were paid less than the minimum wage per hour, *see* 29 U.S.C. § 206, or that they were not compensated at the proper rate for overtime work, *see* 29 U.S.C. § 207. All of these requirements formed part of Plaintiffs' burden of proof. Had Plaintiffs' failed to show that Defendants constituted an "enterprise engaged in commerce"—for example, because Defendants gross annual revenues did not exceed $500,000—dismissal on "jurisdictional" grounds would have been no more appropriate than if Plaintiffs had failed to show that they were paid at sub-par wages, or if Defendants had shown that Plaintiffs were independent contractors rather than "employees." The latter two issues, just as Defendants'

---

**15.** Furthermore, even if the relevant portions of the FLSA did contain a provision specifically invoking the district court's "jurisdiction," such language would not compel an opposite result from that reached here. *See Da Silva,* 229 F.3d at 365.

status as an enterprise engaged in commerce, go to the merits of Plaintiffs' claims, which have been deemed proven by Defendants' default. *See Au Bon Pain Corp. v. Artect, Inc.* 653 F.2d 61, 65 (2d Cir.1981); *Ciner Mfg. Co. v. S.M. Gold Fashion Mfg. Corp.*, No. 94 Civ. 3831(JFK), 1997 WL 193330, at *1 (S.D.N.Y. Apr.21, 1997). Subject matter jurisdiction, on the other hand, was established by Plaintiffs' claims for relief under 29 U.S.C. § 216(b), and by their nonfrivolous allegations in support thereof. *See Bell v. Hood*, 327 U.S. at 682–83, 66 S.Ct. at 776.

Had Defendants appeared in the litigation and come forth with evidence that some or all of Plaintiffs' allegations about Defendants' status or their nonpayment of mandated wages were untrue, they might have defeated Plaintiffs' action on the merits. However, having chosen to default, Defendants have irretrievably lost the opportunity to challenge the claims against them.

Accordingly, because Defendants' motion under Rule 60(b)(4) raises no issue of subject matter jurisdiction, the Court recommends that it be denied.

## II. *Rule 60(b)(6)*

█ Finally, Defendants invoke this Court's "grand reservoir" of equitable power in seeking an order vacating the judgments under Fed.R.Civ.P. 60(b)(6). Defendants assert, *inter alia*, that one of the Plaintiffs never even worked for Defendants, and that one of the original named Defendants, West 21st Street Parking Corp., is not controlled by Mr. Vassallo and "was dissolved." [16] (Defs. Mem. at 9.) Plaintiffs argue that equitable relief is unwarranted because of Defendants' gross laches, among other things.

█ A motion under Rule 60(b) is addressed to the sound discretion of the trial court. *See Mendell in Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir. 1990) (citing *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986)); *Ovadiah v. New York Ass'n for New Americans*, No. 95 Civ. 10523(SS), 1997 WL 342411, at *5 (S.D.N.Y. June 23, 1997). Rule 60(b) is designed to strike a balance between the interests of fairness and the finality of judgments; nevertheless, "final judgments should not be lightly reopened." *Nemaizer*, 793 F.2d at 61; *see also Ovadiah*, 1997 WL 342411, at *5; *Jedrejcic v. Croatian Olympic Comm.*, 190 F.R.D. 60, 76 (E.D.N.Y.1999). Relief provided under Rule 60(b) in general is equitable in nature and is to be guided by equitable principles. *See* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* ("Wright, Miller & Kane") § 2857, at 255 (2d ed.1995). Relief under Rule 60(b)(6) in particular is available only in "extraordinary circumstances." *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir.1994) (quoting *Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950)). By definition, such circumstances are rare, and courts will deny relief where "the movant made a fair and deliberate choice at some earlier time not to move for relief." Wright, Miller & Kane § 2864; *see also Romania v. Wildenstein & Co.*, 147 F.R.D. 62, 65 (S.D.N.Y.1993) (denying motion where movant's earlier derelictions were "best characterized as a deliberate litigation strategy"); *Wagner Spray Tech Corp. v. Wolf*, 113 F.R.D. 50, 51 (S.D.N.Y.1986) ("[The movant's] interest in undoing the results of a litigation strategy which, in hindsight, appears unwise fails to outweigh

---

**16.** Defendants conveniently ignore that, as mentioned, no judgment was ever sought or

entered against West 21st Street Parking Corp.

the judiciary's interest in the finality of judgments.").

To understate the matter, the circumstances of this case do not warrant the exercise of this Court's equitable powers. Defendants' lamentable conduct throughout the litigation completely undermines their appeal to equity. Defendants were fully aware of the pendency of the action well before judgment was entered. They were served with documents relating to Plaintiffs' request for a default, and to Plaintiffs' damages request. Nevertheless, Defendants sat on their hands as Plaintiffs and this Court invested substantial time and effort in addressing Plaintiffs' claims. They waited almost a year and a half from the Court's Order directing entry of the default, and almost a year from the entry of the final monetary Judgment, before appearing to contest the litigation. As Plaintiffs point out, Defendants do not even attempt to offer an explanation for the delay. Rather, as noted above, Defendants' own attorney acknowledged at oral argument this his clients' default was against his advice and without justification. In sum, Defendants' deliberate default despite clear notice of the lawsuit; their equally unjustified delay in seeking relief from the Judgment; and their submission to this Court of affidavits of dubious veracity—not to mention their frivolous request for sanctions against Plaintiffs—clearly disentitle them to equitable relief vacating this Court's Judgment.

Accordingly, this Court recommends the dismissal of Defendants' motion under Rule 60(b)(6).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Defendants' motion be denied in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, U.S.D.J., and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 149–52, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir. 1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989).